Michael J. McCue (SBN: 296425)
Meng Zhong (SBN: 344124)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
203 Redwood Shores Parkway, Suite 670
Redwood City, CA 94065
Tel.: 650.391.1380
MMcCue@LewisRoca.com
MZhong@LewisRoca.com

*Attorneys for Plaintiffs*
*Restoration Hardware, Inc.*
*and RH US, LLC*

**F I L E D**

MAR 03 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

C 23 00948 SK

| | |
|---|---|
| RESTORATION HARDWARE, INC., a Delaware corporation; and RH US, LLC, a Delaware limited liability company,<br><br>    Plaintiffs,<br><br>v.<br><br>ALIMIA LIGHT, a Chinese business entity, et al.<br><br>    Defendants. | **PLAINTIFFS' EMERGENCY *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER, ORDER AUTHORIZING ALTERNATIVE SERVICE OF PROCESS, ORDER FOR EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED; AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: _____<br><br>Hearing Time: _____ |



ORIGINAL

FAXED

120168464.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

    NOTICE OF MOTION ........................................................... 1

    STATEMENT OF ISSUES ...................................................... 2

    MEMORANDUM OF POINTS AND AUTHORITIES ............................... 2

I.  STATEMENT OF FACTS .................................................................... 3

    A.    Background on RH ............................................................... 3

    B.    RH's Intellectual Property Rights Relevant to this Action ............................ 4

    C.    Defendants' Infringement of RH's Intellectual Property Rights ..................... 5

II. ARGUMENT ................................................................................. 11

    A.    The Court Has Personal Jurisdiction Over Each Defendant ........................ 11

    B.    The Court Should Grant a TRO Without Prior Notice ................................. 12

    C.    The Court Should Enjoin Defendants' Infringing Conduct .......................... 14

    E.    The Court Should Authorize Alternative Service of Process ........................ 22

    F.    The Court Should Authorize Limited Expedited Discovery .......................... 24

    G.    The Court Should Not Require RH to Post a Bond to Secure the Injunctive Relief, or Alternatively, Should Set It at No More Than $10,000 ................. 25

III. CONCLUSION ............................................................................... 25

## TABLE OF AUTHORITIES

Cases

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)..........................15

*Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446,
1457 (9th Cir. 1991)...................................................................................................17

*Adobe Sys. Inc. v. Childers*, No. 5:10-CV-03571 JF/HRL, 2011 WL 566812, at *4 (N.D.
Cal. Feb. 14, 2011)....................................................................................................12

*Amazon Content Servs. LLC v. Kiss Libr.*, No. 2:20-CV-01048 MJP, 2020 WL 12863507,
at *3 (W.D. Wash. Aug. 27, 2020) ...........................................................................22

*Bestway Inflatables & Material Corp. v. Doe 1-10*, No. 4:21-CV-05119-PJH, 2021 WL
4924778, at *1 (N.D. Cal. July 15, 2021) ...................................................................3

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999) .17

*Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1263 (D. Kan. 2009) ......................18

*Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 256 (S.D.N.Y. 2006) .........................18

*Carson v. Griffin*, No. 13-CV-0520 KAW, 2013 WL 2403601, at **1-2 (N.D. Cal. May 31,
2013) ..........................................................................................................................23

*Chanel, Inc. v. Partnerships or Unincorporated Associations Identified on Schedule "A"*,
No. C-13-02645 RS, 2013 WL 12120213, at *2–3 (N.D. Cal. June 14, 2013).................3

*Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, No. 5:20-CV-04773-EJD, 2020 WL
4196273, at *1 (N.D. Cal. July 20, 2020).........................................................3, 13, 24

*Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, no. 5:20-CV-04773-EJD, 2020 WL
5199434, at *11 (N.D. Cal. Aug. 17, 2020) ...............................................................18

*Cisco Sys., Inc. v. Wuhan Wolon Commc'n Tech. Co.*, No. 5:21-CV-04272-EJD, 2021 WL
4962661, at *1 (N.D. Cal. July 23, 2021).........................................................3, 13, 18

*Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994)............................................17

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th
Cir. 2003) ...................................................................................................................25

*DFSB Kollective Co. v. Tran*, No. 11-CV-01049-LHK, 2011 WL 6730678, at *3 (N.D. Cal.
Dec. 21, 2011)............................................................................................................12

*Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017)..................19

*Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2005)............................................................20

*Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 WL 1038752, at **1-2
(N.D. Cal. Mar. 27, 2012) .........................................................................................23

*Forged Threadworks, Inc. v. Infidel Indus. LLC*, No. CV147200MWFAJWX, 2015 WL
11438100, at *5 (C.D. Cal. June 2, 2015) ..................................................................14

*Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) ............................14

*FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1236–37 (9th Cir. 1999) ..........................21

*Gathering Tree, LLC v. Symmetry Labs, Inc.*, No. 19-CV-07074-WHO, 2020 WL
3186052, at *3 (N.D. Cal. June 15, 2020) .................................................................15

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000)..................15

*Gucci Am., Inc. v. Los Altos Boots, Inc.*, No. CV1406680 BRO (AJWx), 2014 WL
12561613, at **3-4 (C.D. Cal. Aug. 27, 2014) ..........................................................13

*Gucci Am., Inc. v. Wang Huoqing*, No. C-09-05969 JCS, 2011 WL 31191, at *16 (N.D.
Cal. Jan. 3, 2011)........................................................................................................13

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 133 (2d Cir. 2014)........................................22

Halicki Films, LLC v. Sanderson Sales and Mktg., 547 F.3d 1213, 1225–26 (9th Cir.
2008) ..........................................................................................................................15

*Jenkins v. Pooke*, No. C 07-03112 JSW, 2009 WL 412987, at **2-3 (N.D. Cal. Feb. 17,
2009) ..........................................................................................................................23

*JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016).....16

*JUUL Labs, Inc. v. Chou*, No. CV 21-3056 DSF (PDX), 2021 WL 4900374, at *11 (C.D.
Cal. June 9, 2021)..............................................................................................12, 21

*KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir.
2005) ..........................................................................................................................15

*Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009)........................................15

---

*Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995) .......................................................................................................14

*Micron Tech., Inc. v. United Microelectronics Corp.*, No. 17-CV- 06932-MMC, 2018 WL 6069646, at **1–2 (N.D. Cal. Nov. 20, 2018) ...........................................................24

*Microsoft Corp. v. Goldah.com Network Tech. Co.*, No. 17-CV-02896-LHK, 2017 WL 4536417, at *4 (N.D. Cal. Oct. 11, 2017) .........................................................23, 25

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) .......................23

*Neighborhood Assistance Corp. v. First One Lending Corp.*, No. SACV 12-0463 DOC (MLGx), 2013 WL 12113414, at *5 (C.D. Cal. Feb. 11, 2013) ......................................20

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011) .......................................................................................................16

*Nike, Inc. v. Fujian Bestwinn (China) Indus. Co.*, 166 F. Supp. 3d 1177, 1179 (D. Nev. 2016) .......................................................................................................18

*Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 338 (S.D.N.Y. 2018) ................................24

*Nintendo of Am., Inc. v. Storman*, No. CV19-7818-CBMR (AOX), 2021 WL 4772529, at *2 (C.D. Cal. Aug. 5, 2021) .......................................................................18

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 04-32, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007), *vacated and remanded on other grounds*, 521 F.3d 1351 (Fed. Cir. 2008) .......................................................................................18

*Oomph Innovations LLC v. Shenzhen Bolsesic Elecs. Co.*, No. 5:18-CV-05561-EJD, 2020 WL 5847505, at *2 (N.D. Cal. Sept. 30, 2020) .........................................12

*Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) .......................................12

*Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982)20

*Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 WL 12303367, at **5-6 (C.D. Cal. Jul. 9, 2013) .............................................................................13

*Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521, 1527-28 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992) ...............................................................21

*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) .............13

*Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) ............23

*Robert Bosch, LLC v. Pylon Mfg. Corp*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) ..........18

*Sas v. Sawabeh Info. Servs. Co.*, No. CV 11-04147 GAF (MANx), 2011 WL 13130013, at **6–7 (C.D. Cal. May 17, 2011) .......................................................................25

*SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, No. CV 15-08157-BRO (Ex), 2015 WL 6680807, at *11 (C.D. Cal. Oct. 19, 2015) ..........................................25

*Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)...........24

*Sream, Inc. v. Sahebzada*, No. 18-CV-05673-DMR, 2019 WL 2180224, at *9 (N.D. Cal. Mar. 6, 2019), *report and recommendation adopted*, No. 18-CV-05673-RS, 2019 WL 2180215 (N.D. Cal. Mar. 28, 2019) .......................................................................19

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) .......................................................................................................14

*Tomelleri v. Quick Draw, Inc.*, No. 2:14-CV-02441-CM-JPO, 2016 WL 2755835, at *2 (D. Kan. May 12, 2016) .......................................................................................14

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1016 (9th Cir. 1985)......13

*Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995)..............................19

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12-2582 CW, 2012 WL 2343670, at *15 (N.D. Cal. June 20, 2012) ...................................................................19, 25

*U-Haul Int'l, Inc. v. Jartran, Inc.*, 681 F.2d 1159, 1162 (9th Cir. 1982) .......................20

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14-CV-04050-MEJ, 2014 WL 6788310, at *23 (N.D. Cal. Dec. 2, 2014)......................................................................19

*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, 515 F. Supp. 3d 1061, 1081 (N.D. Cal. 2021) ..............................................................................18

*Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008) ..........................14

*Yee v. NIVS Intellimedia Tech. Grp., Inc.*, No. CV 11-8472 JGB (AJWx), 2013 WL 1276024, at *5 (C.D. Cal. March 25, 2013) ...................................................................13

Statutes

15 U.S.C. § 1117 ..........................................................................................21

15 U.S.C. §§ 1114 ................................................................. 15
17 U.S.C. § 106 ............................................................... 4, 15
17 U.S.C. § 410(c) .............................................................. 15
17 U.S.C. § 502(a) ............................................................. 21
Trademark Modernization Act of 2020, 15 U.S.C. § 1116(a) .......................... 18

Rules
California Business and Professions Code § 17200 ................................. 17
Fed. R. Civ. P. 26(d) .......................................................... 24
Rule 4(f)(3) ................................................................... 23
Rule 4(f)(3) of the Federal Rules of Civil Procedure ......................... 1, 23
Rule 65(b) of the Federal Rules of Civil Procedure ........................... 1, 2

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that on _____, 2023, at ___ [a.m.]/[p.m.] (or as soon thereafter as the matter may be heard) before Judge _____ of the United States District Court for the Northern District of California, pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Plaintiffs Restoration Hardware, Inc. and RH US LLC will move and hereby move the Court for an *ex parte* temporary restraining order and, upon its expiration, a preliminary injunction:

1.    Enjoining Defendants and their respective officers, agents, servants, employees, and all other persons acting in active concert and participation with them from:

    a. Copying, distributing, or publicly displaying any of the RH Copyrighted Works (as defined in the Motion); and

    b. Using any of the RH Marks (as defined in the Motion), or any marks confusingly similar thereto, in commerce in connection with the manufacturing, offering for sale, or sale of any lighting products;

2.    Freezing certain Defendants' financial accounts in the United States;

3.    Authorizing Plaintiffs to serve the Defendants via email pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure;

4.    Granting Plaintiffs leave to conduct limited expedited discovery;

5.    Ordering Defendants to appear and show cause why a preliminary injunction should not be issued upon expiration of the temporary restraining order; and

6.    If the Court issues a temporary restraining order and Defendants do not comply, ordering the domain name registrars and registry for the Defendants' domains to disable the domain names and ordering the domain name registrars, domain name registry, website hosting services, ecommerce platforms, online retailers, content delivery networks, social media platforms, and payment processors to cease providing services to Defendants.

1

This Motion is based on the Memorandum of Points and Authorities below, the supporting declarations of Michael J. McCue and Sophy Manes, and exhibits thereto, all other papers and pleadings on file in this case, and such additional arguments and evidence as may be presented at any hearing on this Motion.

## STATEMENT OF ISSUES

1.      Should the Court grant a temporary restraining order against Defendants and do so on an *ex parte* basis?

2.      Should the Court issue a freeze on Defendants' specific financial accounts in the United States in which Defendants may hold revenue from their infringing conduct, pending further order of the Court?

3.      Should the Court authorize service of process on Defendants via email?

4.      Should the Court grant permission to Plaintiffs to conduct expedited discovery to enable Plaintiffs to obtain information sufficient to identify all individuals and companies responsible for the infringing conduct at issue in this case and to determine the existence and location of financial accounts that may be owned or controlled by Defendants?

5.      Should the Court issue an order to show cause why it should not enter a preliminary injunction against the Defendants?

6.      If the Court enters a temporary restraining order but Defendants do not timely and fully comply, should the Court order the domain name registrars and registry to disable the Defendants' websites and order the website hosting services, ecommerce platforms, content delivery networks, social media platforms, online retailers, and payment processors to cease providing services to Defendants and the websites pending further order of the Court?

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Plaintiffs Restoration Hardware, Inc. and RH US, LLC (collectively, "RH") respectfully move the Court for an *ex parte* temporary restraining order ("TRO") and preliminary injunction enjoining Defendants from infringing RH's copyrights and trademarks, and providing other relief as set forth

below.

Defendants are blatantly and willfully infringing RH's intellectual property rights by using *hundreds* of RH's copyrighted photographs of RH lighting products and several of RH's product brand names to sell knockoffs of RH lighting products to U.S. consumers on websites that target the U.S. market

Although Defendants are based in China, they have attempted to capitalize on RH's goodwill and reputation by targeting the United States. Indeed, all of the Defendants target the U.S. market for advertising and selling knockoffs of RH lighting products, by using RH photographs, RH marks, and other RH intellectual property.

As set forth below, RH is likely to succeed on the merits of its copyright infringement, trademark infringement, and California unfair competition claims. RH is likely to suffer irreparable injury if the Court does not grant *ex parte* injunctive relief to enjoin further infringing conduct and freeze Defendants' financial accounts in the United States. The balance of hardships and the public interest also weigh in favor of granting a TRO and preliminary injunction.[1]

## I.    STATEMENT OF FACTS

### A.    Background on RH

RH is an innovative and popular luxury retailer in the home furnishings marketplace. RH offers a wide variety of luxury home furnishings, including furniture, lighting, textiles,

---

[1] This Court has granted similar relief in other cases filed by intellectual property owners against foreign infringers under similar circumstances. *See, e.g., Restoration Hardware v. Sichuan Wei Li Tian*, Case No. 22-3054-JSC (Dkt. No. 13) (ordering granting similar TRO against foreign infringers of RH's intellectual property rights); *Cisco Sys., Inc. v. Wuhan Wolon Commc'n Tech. Co.*, No. 5:21-CV-04272-EJD, 2021 WL 4962661, at *1 (N.D. Cal. July 23, 2021) (granting TRO, locking or disabling domain names, freezing PayPal accounts); *Bestway Inflatables & Material Corp. v. Doe 1-10*, No. 4:21-CV-05119-PJH, 2021 WL 4924778, at *1 (N.D. Cal. July 15, 2021) (granting TRO, locking or disabling domain names, freezing PayPal accounts, ordering immediate discovery); *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, No. 5:20-CV-04773-EJD, 2020 WL 4196273, at *1 (N.D. Cal. July 20, 2020) (granting TRO, freezing assets, ordering third parties to stop providing services to defendants, disabling and locking domain names, ordering expedited discovery, and alternative service); *Chanel, Inc. v. Partnerships or Unincorporated Associations Identified on Schedule "A"*, No. C-13-02645 RS, 2013 WL 12120213, at *2–3 (N.D. Cal. June 14, 2013) (granting TRO, locking domain name, allowing discovery from privacy service, and freezing PayPal accounts).

and other products. RH was founded in Eureka, California, in 1980. Over the past 42 years, RH has grown to approximately 63 retail stores (known as "galleries") in the United States and Canada. RH sells its products (including the lighting products at issue in this case) through its galleries, catalogs (known as "source books"), and through its website at <RH.com>. *See* Declaration of Sophy Manes ("Manes Decl.") ¶ 2.

RH is well known for using artistic photographs to promote its products, including its lighting products. RH spends a substantial amount of time, money, and effort staging and photographing its products. RH's source books and websites feature thousands of photographs featuring RH's products in upscale and refined settings. RH's photographs and products are frequently featured in design, home décor, and lifestyle publications, such as *Architectural Digest*, *Elle Décor*, *InStyle*, *Interiors*, *Luxe* and *Veranda*. Manes Decl. ¶ 3.

**B.    RH's Intellectual Property Rights Relevant to this Action**

**1.    Copyrights in Photographs**

RH owns copyrights in the product photographs, product copy, and lighting design at issue in this case. RH currently owns more than 90 U.S. copyright registrations, including registrations for source books, the <RH.com> website, and a compilation of lighting photographs, which collectively cover all of the photographs at issue in this case). *See* Manes Decl. ¶ 4, Ex. A ("**RH Copyrighted Works**"). Based on these registrations, RH owns the exclusive right to copy, distribute and publicly display the RH Copyrighted Works. *See* 17 U.S.C. § 106.

**2.    Trademark Rights in Lighting Product Names**

RH owns common law rights in the product names it uses for the lighting products at issue in this case: AQUITAINE, ARCACHON, BOULE DE CRISTAL, CAMINO, CANNELE, CASCADA, ECLATANT, FULCRUM, HARLOW, MACHINIST, MARIGNAN, PAUILLAC, PEARL, RAIN, RAVELLE, RHYS, SAN MARCO, SAVILE, SPIRIDON, UTILITAIRE, and WRIGHT (collectively, "**RH Marks**"). As a result of RH's use of the product names in commerce, consumers have come to associate the marks with high-quality lighting products from RH. *See* Manes Decl. ¶ 5, Ex. B (showing RH's use of the

product names and dates of first use in commerce). Based on its continuous use of the RH product names, RH owns exclusive common law rights to use the names in connection with the sale of lighting products in the United States.

**C.     Defendants' Infringement of RH's Intellectual Property Rights**

Each and every Defendant is engaging in blatant infringement of RH's intellectual property rights. Due to the volume of infringement, RH has compiled all instances of copyright infringement of the RH Copyrighted Works into Exhibit C to Manes Decl. See Manes Decl. ¶ 6, Ex. C. Further, RH has compiled all instances of infringement of the RH Marks into Exhibit D of the Manes Decl. See Manes Decl. ¶ 7, Ex. D.

**1.     Examples of Blatant Copyright Infringement**

For example, as shown by the side-by-side table on page 5 in Exhibit C, Defendant Alimia has plainly engaged in blatant copyright infringement:

| RH Copyrighted Works | Infringing Photo | RH Copyright Registration |
|---|---|---|
|  | <br><br>https://www.alimialight.com/products/modern-luxury-brach-crystal-shades-round-chandelier-36- | Issued registration for RH.com website (2022) (VA 2-298-977) |
|  | <br><br>https://www.alimialight.com/products/ravelle-single-head-long-wall-sconce-19-h | Issued registration for RH.com web site (Fall 2019) (VA 2-195-419) |

| RH Copyrighted Works | Infringing Photo | RH Copyright Registration |
|---|---|---|
|  |  https://www.alimialight.com/products/fulcrum-brass-grand-wall-sconce-with-glass-shade | Issued registration for RH.com website (2022) (VA 2-298-977) |

Similarly, Defendant Wing Lighting is also engaging in blatant copying of RH's Copyrighted

Works as shown in a side-by-side table on page 36 in Exhibit C:

| RH Copyrighted Works | Infringing Photo | RH Copyright Registration |
|---|---|---|
|  |  https://www.winglightings.com/products/wineglass-round-chandelier-light-brass | Issued registration for RH.com website (2022) (VA 2-298-977) |
|  |  https://www.winglightings.com/products/modern-perle-glass-wall-sconces | Issued registration for RH.com website (2022) (VA 2-298-977) |

| RH Copyrighted Works | Infringing Photo | RH Copyright Registration |
|---|---|---|
|  | https://www.winglightings.com/products/planet-pendant-light | Issued registration for RH.com website (2022) (VA 2-298-977) |

As a final example, Defendant Fanci Light is also engaging in blatant copying of RH's Copyrighted Works as shown in a side-by-side table on page 210 in Exhibit C:

| RH Copyrighted Works | Infringing Photo | RH Copyright Registration |
|---|---|---|
| | https://oasislamps.com/products/2-head-pearl-wall-sconce | Issued registration for RH.com website (2022) (VA 2-298-977) |
| | https://fancilight.com/products/modern-pearl-glass-wall-sconces | Issued registration for RH.com website (2022) (VA 2-298-977) |

| RH Copyrighted Works | Infringing Photo | RH Copyright Registration |
|---|---|---|
|  | Bellanca Crystal Linear Chandelier W 60" $1,287.00 Color: Brass Crystal Ball Color: Clear Clear Smoky Quantity Add to cart Buy it now https://fancilight.com/products/bellanca-crystal-linear-chandelier-w-60 | Issued registration for RH.com website (2022) (VA 2-298-977) |

As illustrated fully in Exhibit C, all of the Defendants have engaged in blatant copyright infringement of the RH Copyrighted Works. (Ex. C to Manes Decl.)

### 2.    Examples of Flagrant Trademark Infringement

As with copyright infringement, each Defendant has further engaged in flagrant forms of trademark infringement of the RH Marks. For example, as shown by the side-by-side table on page 5 in Exhibit D, Defendant Alimia has plainly engaged in flagrant trademark infringement:

| RH Trademarks | Infringing Mark |
|---|---|
| **Arcachon** Led Round Two-Tier Chandelier 60" https://rhmodern.rh.com/catalog/product/product/product.jsp?productId=prod23990230 | **Arcachon** Crystal Shades Two-Tier Round Chandelier https://www.alimialight.com/products/modern-luxury-brach-crystal-shades-two-tier-round-chandelier |
|  |  |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19 Similarly, Defendant Grand Lamps is also engaging in flagrant infringement of RH's

20 trademarks as shown in a side-by-side table on page 16 in Exhibit D:

21
22
23
24
25
26
27
28



As a final example, Defendant Oasis Lamps is also engaging in flagrant infringement of RH's trademarks as shown in a side-by-side table on page 27 in Exhibit D:

| RH Trademarks | Infringing Mark |
|---|---|
| **Harlow** Calcite Round Chandelier 60" <br>  <br> https://rh.com/catalog/product/product.jsp?-productId=prod19670082 | **Harlow** Calcite De Round Chandelier 60" <br>  <br> https://oasislamps.com/products/hewson-calcite-round-chandelier-62 |
| **Spiridon** Round Chandelier 44" <br>  <br> https://rh.com/catalog/product/product.jsp?-productId=prod6410961 | Crystal **Spiridon** Ring Chandelier D32" 44" 59" <br>  <br> https://oasislamps.com/products/crystal-spiridon-ring-chandelier-d32-44-59 |
| **Ravelle** Grand Sconce <br>  <br> https://rh.com/catalog/product/product.jsp?-productId=prod17430468&sale=false&src-=upsell | Glass Shaded **Ravelle** Grand Wall Sconce <br> https://oasislamps.com/products/glass-shaded-ravelle-grand-wall-sconce |

As illustrated fully in Exhibit D, all of the Defendants have engaged in flagrant infringement of the RH's trademarks. (Ex. D to Manes Decl.)

## II.  ARGUMENT

### A.  The Court Has Personal Jurisdiction Over Each Defendant

Defendants have purposefully directed their actions towards the United States. For claims sounding in tort, the Ninth Circuit applies a "purposeful direction" test and looks to

evidence that the defendant has directed its actions at the forum state, even if those actions took place elsewhere. *Picot v. Weston,* 780 F.3d 1206, 1212 (9th Cir. 2015).

Here, Defendants have purposefully directed their actions towards California because they each operate interactive commercial websites (i.e., the websites enable customers to purchase products and ask customer service questions), and sell and ship infringing products to California. *See* McCue Decl. ¶¶ 2-23, Exs. A-X. Such conduct is sufficient for the Court to exercise personal jurisdiction over Defendants. *See Oomph Innovations LLC v. Shenzhen Bolsesic Elecs. Co.*, No. 5:18-CV-05561-EJD, 2020 WL 5847505, at *2 (N.D. Cal. Sept. 30, 2020) (finding that defendants' sales of products to California residents through interactive Internet websites was sufficient to confer personal jurisdiction); *DFSB Kollective Co. v. Tran*, No. 11-CV-01049-LHK, 2011 WL 6730678, at *3 (N.D. Cal. Dec. 21, 2011) ("Defendant operates several highly interactive websites that allow him to infringe on DFSB [copyrighted] Works"); *Adobe Sys. Inc. v. Childers*, No. 5:10-CV-03571 JF/HRL, 2011 WL 566812, at *4 (N.D. Cal. Feb. 14, 2011) ("The interactivity of the website, together with SoftwareMedia's additional California contacts, is to show that SoftwareMedia's conduct was aimed expressly at this forum. ").

## B.   The Court Should Grant a TRO Without Prior Notice

RH is seeking a TRO on an *ex parte* basis pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and L.R. 65-1.[2]  Not providing notice to Defendants is necessary to ensure that they do not move specific monetary accounts outside the U.S., or destroy or conceal evidence. McCue Decl. ¶ 25

Providing notice to Defendants would give them the opportunity to move money from financial accounts (such as money on deposit from sales through PayPal) beyond the jurisdiction of this Court, rendering any monetary judgment RH may ultimately obtain worthless. *See, e.g.*, *JUUL Labs, Inc. v. Chou*, No. CV 21-3056 DSF (PDX), 2021 WL 4900374, at *11 (C.D. Cal. June 9, 2021) ("Given the deceitful nature of counterfeiting,

---

[2] Pursuant to Local Rule 65-1, a proposed TRO and order to show cause is being provided contemporaneously herewith and the Clerk shall be notified of this filing.

courts in the Ninth Circuit regularly find that dissipation of assets is likely and grant asset freezes in cases involving willful counterfeiting, particularly overseas where defendants can hide assets from a potential judgment"). After all, Defendants are located in China, and judgments from U.S. courts are typically difficult to enforce in China.[3]

The Ninth Circuit upholds *ex parte* TROs where notice would render further prosecution fruitless, including "situations where an alleged infringer is likely to dispose of the infringing goods before the hearing." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). For example, in *Gucci Am., Inc. v. Los Altos Boots, Inc.*, the court issued a TRO without notice because, in part, the defendant could easily conceal the counterfeit goods and related records given their location outside the U.S. *Gucci Am., Inc. v. Los Altos Boots, Inc.*, No. CV1406680 BRO (AJWx), 2014 WL 12561613, at **3-4 (C.D. Cal. Aug. 27, 2014); s*ee also Cisco Sys.*, 2021 WL 4962661, at *4 (providing no notice when evidence showed defendant "is willfully offering and selling transceivers using counterfeit [marks] . . . and are able and likely to dispose of evidence if given advance notice of the present motion"); *Cisco Sys.*, 2020 WL 4196273, at *1 (same); *see also supra*, page 4, n.1 (collecting cases).

Here, the sheer number of infringing photographs and trademarks demonstrates Defendants are acting willfully, which heightens the risk that they will destroy or conceal evidence, including records and infringing goods. *See, e.g., Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1016 (9th Cir. 1985) ("the record indicates that Fairbanks copied virtually everything with regard to that product. It is clear that Fairbanks attempted to capitalize on the secondary meaning of "Shift Kit" in order to obtain an

---

[3] *Yee v. NIVS Intellimedia Tech. Grp., Inc.*, No. CV 11-8472 JGB (AJWx), 2013 WL 1276024, at *5 (C.D. Cal. March 25, 2013) (stating that the Chinese company whose executives are Chinese residents "bore no real risk of sanctions" given the difficulty of enforcing a U.S. judgment against a Chinese national); *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 WL 12303367, at **5-6 (C.D. Cal. Jul. 9, 2013) (finding that the plaintiff "would face significant obstacles in enforcing any judgment against the Defendants' assets in China"); *Gucci Am., Inc. v. Wang Huoqing*, No. C-09-05969 JCS, 2011 WL 31191, at *16 (N.D. Cal. Jan. 3, 2011) (noting that enforcing a judgment may be difficult in China, and compelling transfer of counterfeiter's domain names to plaintiffs).

advantage from the good will built up by Transgo"); *Forged Threadworks, Inc. v. Infidel Indus. LLC*, No. CV147200MWFAJWX, 2015 WL 11438100, at \*5 (C.D. Cal. June 2, 2015) (in copyright and trademark case, "the Court concludes that Defendant's acts of copying were willful, as Plaintiff's exhibits show that Defendant created exact copies of Plaintiff's material"); *Tomelleri v. Quick Draw, Inc.*, No. 2:14-CV-02441-CM-JPO, 2016 WL 2755835, at \*2 (D. Kan. May 12, 2016) ("Defendant copied forty-six (46) of those copyrighted works multiple times. The infringement was not innocent").

Accordingly, the Court should grant the requested relief on an *ex parte* basis.

## C.   The Court Should Enjoin Defendants' Infringing Conduct

RH seeks a TRO prohibiting Defendants from infringing RH's rights in RH Copyrighted Works and RH Marks.

The standard for issuing a TRO is identical to the standard for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). A plaintiff must establish that: (1) "[it] is likely to succeed on the merits"; (2) "[it] is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [its] favor"; and (4) "an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### 1.   RH Is Likely to Succeed on the Merits of its Claims

RH is likely to succeed on the merits of its claims for copyright infringement, trademark infringement, and unfair competition under California law.

#### a.   <u>Copyright Infringement</u>

To prevail on its copyright infringement claims, RH must (1) show ownership of the

copyrights, and (2) a violation of at least one exclusive right under 17 U.S.C. § 106. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). RH can easily satisfy both requirements. First, the Copyright Office has issued certificates of registration for RH source books and website that include the RH Copyrighted Works shown in Exhibit A. (*See* Manes Decl. Exs. A-B). Registration creates a presumption of copyright validity and ownership. *See* 17 U.S.C. § 410(c).

Second, both Defendants have directly infringed RH's copyrights. Exhibit C shows a side-by-side comparisons of the RH copyrighted photographs and Defendants' infringing photos as well as a list containing the links to all instances where Defendants have used RH's copyrighted photographs. Manes Decl., Ex. C.

Accordingly, RH is likely to succeed on the merits of its copyright claims against Defendants.

### b.   Trademark Infringement Claim

To prevail on a claim for trademark under the Lanham Act, RH must show ownership of the RH Marks and that Defendants' use of the marks or marks similar thereto is likely to cause confusion, or to cause mistake, or to deceive. *See Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009) (*quoting KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000) (quotation omitted). *See also* 15 U.S.C. §§ 1114, 1125(a). The Lanham Act protects both registered and unregistered marks. *Halicki Films, LLC v. Sanderson Sales and Mktg.,* 547 F.3d 1213, 1225–26 (9th Cir. 2008). To show ownership of an unregistered mark, "the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Gathering Tree, LLC v. Symmetry Labs, Inc.,* No. 19-CV-07074-WHO, 2020 WL 3186052, at *3 (N.D. Cal. June 15, 2020) (citation omitted).

Here, RH can establish that it owns the RH Marks based on its prior use of the RH Marks in commerce. RH began using each of the RH Marks prior to Defendants' first use. Manes Decl. ¶ 7 & Exs. B (showing the date of first use for each of the RH Marks) and D

(showing use of RH Marks along RH photographs). Indeed, Defendants are using RH's copyrighted photographs alongside the RH Marks, indicating that they are clearly copying the marks from RH, and thus must have begun use after RH.

In addition, RH can establish that Defendants' use of the RH Marks is likely to cause confusion. To determine whether a likelihood of confusion exists, the Ninth Circuit considers the *Sleekcraft* factors: (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (internal citations omitted).

Here, the *Sleekcraft* factors weigh in favor of RH.

The first factor (strength of the mark) favors RH because the RH Marks are strong, based on their inherent distinctiveness as applied to lighting products. The RH Marks are either arbitrary or suggestive when used in connection with lighting products. Indeed, they do not describe any characteristic or feature of the lighting products. Manes Decl. ¶ 5.

The second and third factors (similarity of the marks and relatedness of the products) favor RH because Defendants are using marks identical or nearly identical to the RH Marks to advertise and sell lighting products – apparent knockoffs of the RH products. *See* Manes Decl. D.

The fourth factor (actual confusion) is neutral, because RH is not aware of instances of actual confusion at this early stage. Manes Decl. ¶ 8. Nonetheless, actual confusion is not necessary for a finding of likelihood of confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011) ("actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act") (internal citations and quotation marks omitted).

The fifth factor (marketing channels) favors RH, because RH and the Defendants all market and sell their products through a common primary marketing channel: websites.

Manes Decl. ¶ 8.

The sixth factor (consumer care) is neutral. Although consumers are likely to exercise care in purchasing lighting fixtures, based on Defendants' use of RH Marks and RH Copyrighted Works to sell the lighting fixtures, consumers may believe that Defendants are authorized resellers of RH's lighting fixtures. Manes Decl. ¶ 9.

The seventh factor (intent) favors RH, because Defendants' use of several marks identical to the RH Marks, clearly demonstrates that Defendants intended to cause confusion.

The eighth factor (expansion of product lines) favors RH because Defendants are already competing to sell the same types of products. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999) ("The likelihood of expansion in product lines factor is relatively unimportant where two companies already compete to a significant extent.").

Since all of the factors favor RH (except for two that are neutral), RH is likely to succeed on the merits of its unfair competition claim.

As for RH's parallel claim for unfair competition under California state law, the Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). "Under both, the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (internal quotation marks omitted). As such, given that RH is likely to succeed on its federal unfair competition claim, RH is also likely to succeed on its California unfair competition claim.

### 2.  Defendants' Infringement is Likely to Cause Irreparable Injury Unless the Court Grants Injunctive Relief

If the Court does not grant injunctive relief, RH is likely to suffer irreparable injury.

As a threshold matter, with respect to RH's trademark infringement claim against Defendants, if the Court finds that RH is likely to prevail on the merits, then RH is entitled

to a *presumption* of irreparable harm under the recently enacted Trademark Modernization Act of 2020, 15 U.S.C. § 1116(a); *see also Cisco Sys.*, 2021 WL 4962661, at *7 (under the Trademark Modernization Act of 2020, "a plaintiff seeking an injunction against trademark infringement 'shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success . . . in the case of a motion for a preliminary injunction or temporary restraining order'") (*citing* Pub. L. 116-260); *Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, 515 F. Supp. 3d 1061, 1081 (N.D. Cal. 2021) (same); *Nintendo of Am., Inc. v. Storman*, No. CV19-7818-CBMR (AOX), 2021 WL 4772529, at *2 (C.D. Cal. Aug. 5, 2021) (same).

Even in the absence of this presumption, RH can demonstrate that the harm it is likely to suffer is irreparable because monetary remedies are likely inadequate against these Defendants because both are based in China and can easily avoid enforcement of any judgments. *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, no. 5:20-CV-04773-EJD, 2020 WL 5199434, at *11 (N.D. Cal. Aug. 17, 2020) (finding irreparable injury given it is "difficult if not impossible to enforce U.S. judgments in China"); *Nike, Inc. v. Fujian Bestwinn (China) Indus. Co.*, 166 F. Supp. 3d 1177, 1179 (D. Nev. 2016) (finding irreparable injury for order for TRO and seizure because "it may be difficult or impossible for NIKE to recover a money judgment against" a foreign company with no presence in the United States).[4] Specifically, if the Court does not freeze Defendants' U.S. accounts, they can drain their U.S. accounts, thereby leaving RH with, at best, a default judgment that cannot be enforced in China.

In addition, in the absence of injunctive relief prohibiting Defendants from infringing

---

[4] *See also, Robert Bosch, LLC v. Pylon Mfg. Corp*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (*citing O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 04-32, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007), *vacated and remanded on other grounds*, 521 F.3d 1351 (Fed. Cir. 2008) (finding irreparable harm where "all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages")); *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction where "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 256 (S.D.N.Y. 2006) (granting preliminary injunction where defendant was largely based abroad).

RH's intellectual property, RH risks loss of control over its business reputation and damage to goodwill to the extent that consumers believe that the lower quality products they purchase from Defendants are authentic RH products. Courts have held that "loss of control over business reputation and damage to goodwill" constitutes irreparable injury supporting injunctive relief. *Sream, Inc. v. Sahebzada*, No. 18-CV-05673-DMR, 2019 WL 2180224, at *9 (N.D. Cal. Mar. 6, 2019), *report and recommendation adopted*, No. 18-CV-05673-RS, 2019 WL 2180215 (N.D. Cal. Mar. 28, 2019); *see also Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (in copyright action, finding loss of goodwill cannot be remedied with damages, and supported finding of irreparable injury); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12-2582 CW, 2012 WL 2343670, at *15 (N.D. Cal. June 20, 2012) (where defendants sold counterfeit products, finding imminent danger of irreparable injury and no adequate remedy at law, and issuing TRO as sales would likely damage plaintiff's reputation and goodwill).

Accordingly, RH is likely to suffer irreparable injury if injunctive relief is not granted.

### 3. The Balance of Equities Favors RH

A TRO or preliminary injunction will impose no legally cognizable hardship on Defendants. "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'" *Sream*, 2019 WL 2180224, at *10 (*quoting Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) (superseded on other grounds)); *see also United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14-CV-04050-MEJ, 2014 WL 6788310, at *23 (N.D. Cal. Dec. 2, 2014) (disregarding claimed hardship from loss of infringing sales).

Any hardship on Defendants from the imposition of a TRO or preliminary injunction is nothing more than the natural result of their own flagrant wrongdoing. At the same time, Defendants' sale of knockoff products using RH Copyrighted Works and RH Marks risks harming RH's reputation and goodwill and creates the false impression that RH products are available from sources other than RH. This diminishes the return value that RH

receives from its copyrights, trademarks, and associated goodwill. Accordingly, the balance of equities strongly supports issuing a TRO and preliminary injunction in this case.

### 4.    Granting Injunctive Relief Is in the Public Interest in this Case

It is in the public interest to enjoin Defendants' infringing conduct for several reasons. Absent an injunction, U.S. consumers will be duped into purchasing knockoffs of RH products from unknown and unaccountable foreign infringers rather than genuine RH products that are sold only by RH and that are backed by RH's customer service and return policy, product safety testing and the like. Manes Decl. ¶ 9. Public policy strongly supports shutting down infringers to protect end consumers. *Neighborhood Assistance Corp. v. First One Lending Corp.*, No. SACV 12-0463 DOC (MLGx), 2013 WL 12113414, at *5 (C.D. Cal. Feb. 11, 2013). This is so because "the purpose of the Lanham Act is 'to protect the public from false and deceptive practices that create confusion in the marketplace." *Id.* (*quoting U-Haul Int'l, Inc. v. Jartran, Inc.*, 681 F.2d 1159, 1162 (9th Cir. 1982)). The Ninth Circuit has explained that "the consuming public is equally injured by an inadequate judicial response to trademark infringement," so "it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement." *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982).

In addition, the rampant copyright infringement in this case creates a compelling public interest in protecting RH's marketable rights to its copyrighted works. *See Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2005) ("[t]he economic philosophy behind the [Copyright] [C]lause . . . is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors".)

Thus, the public interest favors granting the requested TRO and preliminary injunction.

### D.    The Court Should Issue a Temporary Freeze on Defendants' Financial Accounts in The United States

RH seeks a TRO ordering Defendants to cease their infringing conduct. However, since these Defendants are based in China and given their flagrant infringement,

Defendants are not likely to comply with the Court's order. Accordingly, RH additionally seeks specific forms of relief to allow it to effectively enforce its rights. Specifically, RH additionally seeks an order to freeze Defendants' financial accounts in the United States.

The Ninth Circuit has held that when a plaintiff seeks equitable remedies under the Lanham Act, including recovery of a defendant's profits under 15 U.S.C. § 1117, a district court has "inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief." *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521, 1527-28 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992). This includes "the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies." *Id.* (quotation omitted). In *Reebok*, the Ninth Circuit explained "it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement" and affirmed the district court's granting of TROs and preliminary injunctions to freeze the defendants' assets, in addition to preventing various counterfeiting-related activities. *Id.* at 560 (quotation omitted).

And "[g]iven the deceitful nature of counterfeiting, courts in the Ninth Circuit regularly find that dissipation of assets is likely and grant asset freezes in cases involving willful counterfeiting, particularly overseas where defendants can hide assets from a potential judgment." *JUUL Labs*, 2021 WL 4900374, at *11. In other words, "[a]sset freezes are regularly found to be warranted to preserve assets in counterfeiting cases, particularly where the defendants operate overseas or online." *Id.* (collecting cases); *see also FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1236–37 (9th Cir. 1999) (finding dissipation of assets warranting freeze based on defendants keeping funds in the Cook Islands). And "[c]ourts have imposed asset freezes in cases with Chinese defendants because of the difficulty in enforcing U.S. judgments in China." *JUUL Labs*, 2021 WL 4900374, at *12.

In addition, this Court has the authority to freeze assets under the Copyright Act. Under 17 U.S.C. § 502(a), the Court has the authority to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement

of a copyright." In *Amazon Content Servs. LLC v. Kiss Libr.*, No. 2:20-CV-01048 MJP, 2020 WL 12863507, at *3 (W.D. Wash. Aug. 27, 2020), the Court enjoined PayPal and other financial institutions from "transferring or disposing of any money or other of Defendants' assets, not allowing such funds to be transferred or withdrawn" in connection with restraining defendants' widespread infringement.

Here, RH seeks recovery of Defendants' profits from its copyright and trademark infringement. The sheer number of RH Copyrighted Works and RH Marks that Defendants have infringed shows that they are willful infringers. As a result, Defendants are unlikely to voluntarily comply with any orders of this Court. Rather, given they are located in China, Defendants will likely default and hide or dissipate their assets to avoid enforcement of any judgment that the Court may enter against them.

Accordingly, the Court should issue an order instructing PayPal and any other U.S. financial institutions to temporarily freeze Defendants' financial accounts to prevent any transfer or withdrawal of funds. The Court's authority is not limited to freezing specifically identified assets, or to assets within this District or the United States. Rather, the Court's authority can extend to any banks and third parties that have custody of Defendants' assets or provide payment services to Defendants. *See Reebok*, 737 F. Supp. at 1527–28 (TRO and preliminary injunction that "any banks, savings and loan associations, or other financial institutions . . . who receive actual notice of this order by personal service or otherwise, are preliminarily enjoined from transferring, disposing of, or secreting any money, stocks or other assets of these defendants, until further order of the court" except in limited circumstances); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 133 (2d Cir. 2014) (rejecting argument that plaintiff had to identify particular property derived from counterfeiting before obtaining TRO and preliminary injunction freezing all assets).

In this case, RH seeks to freeze the specific accounts identified in its proposed order, which RH has discovered through test purchases.

### E.    The Court Should Authorize Alternative Service of Process

RH also requests an order authorizing it to serve Defendants by email because of

the urgency of this matter and the difficulty and delays in effecting service in China through the Hague Convention. For defendants located in foreign countries, courts are permitted to authorize service of process "by other means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3).

The only requirements under Rule 4(f)(3) are that service be directed by the court and not prohibited by international agreement. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). "[C]ourt-directed service under Rule 4(f)(3) is as favored as service available under Rules [4(f)(1-2)]" and does not require first attempting other means. *Id.* To provide due process in this context, courts evaluate whether a service method is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 1016 (*quoting Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). In *Rio*, the Ninth Circuit agreed that service by email was appropriate, particularly where the defendant conducted its business by email. *Id.* at 1017-18.

Service by email on defendants in China is not barred by any international convention. *See Microsoft Corp. v. Goldah.com Network Tech. Co.*, No. 17-CV-02896-LHK, 2017 WL 4536417, at *4 (N.D. Cal. Oct. 11, 2017). Courts in this district have authorized email service and found that it is reasonably calculated to provide notice to foreign defendants, including defendants based in China, where receipt is confirmed, the email addresses were previously used to communicate with the plaintiffs, or the defendants operated online and used email for their businesses. *Id.* at **5-6 (affirming that email service on defendants in China was sufficient where receipt was confirmed); *Carson v. Griffin*, No. 13-CV-0520 KAW, 2013 WL 2403601, at **1-2 (N.D. Cal. May 31, 2013) (authorizing service by email where the plaintiff previously corresponded with the defendants via email); *Jenkins v. Pooke*, No. C 07-03112 JSW, 2009 WL 412987, at **2-3 (N.D. Cal. Feb. 17, 2009) (same); *Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 WL 1038752, at **1-2 (N.D. Cal. Mar. 27, 2012) (authorizing email service, including in Hong Kong, where defendants operated online and relied on email

communications for their businesses); *Cisco Sys.*, 2020 WL 4196273, at **13-14 (authorizing service by email on Chinese companies).

Here, each of the Defendants provides an email address on its website for communication and sales. McCue Decl. ¶¶ 2-23 & Ex. A-X.

Furthermore, email service is appropriate and necessary in this case because of the urgency in stopping Defendants' continued infringement. At the same time, while China has signed the Hague Convention on Service, district courts have recognized that China often obstructs and substantially delays service under that process for many months. *See Micron Tech., Inc. v. United Microelectronics Corp.*, No. 17-CV- 06932-MMC, 2018 WL 6069646, at **1–2 (N.D. Cal. Nov. 20, 2018); *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 338 (S.D.N.Y. 2018).

Allowing RH to serve Defendants by email in this case is the most efficient, effective, and fastest way to provide actual notice of this lawsuit, while avoiding irreparable injury, uncertainty, and delay of requiring service in China through the Hague Convention.

F.    **The Court Should Authorize Limited Expedited Discovery**

Courts have the discretion to allowed expedited discovery, particularly in cases where plaintiffs seek temporary or preliminary injunctive relief. *See* Fed. R. Civ. P. 26(d) (allowing for expedited discovery "by court order"), Advisory Comm. Note on 1993 Amendment (stating "[d]iscovery can begin earlier" and "[t]his will be appropriate in some cases, such as those involving requests for a preliminary injunction"). Expedited discovery can be granted for good cause "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party," and "good cause is frequently found in cases involving claims of infringement and unfair competition." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Here, RH seeks expedited third-party discovery on various third parties that provided services to the Defendants to enable RH to identify all of the individuals and companies responsible for the infringing conduct and to identify and freeze the Defendants' financial accounts in the U.S. Specifically, RH requests leave to seek discovery from payment providers, including

PayPal, Visa, MasterCard, American Express, and JCB, regarding Defendants' financial accounts and records. *Cisco Sys.*, 2020 WL 4196273, at *12 ("Courts in the Ninth Circuit routinely find good cause for expedited discovery to enable plaintiffs in counterfeiting cases to identify: 1) accounts used for and transactions associated with infringing sales . . . .").[5]

### G. The Court Should Not Require RH to Post a Bond to Secure the Injunctive Relief, or Alternatively, Should Set It at No More Than $10,000

"The district court is afforded wide discretion in setting the amount of the bond . . . and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (internal citations omitted).

Because of the clear evidence of Defendants' copyright and trademark infringement and the lack of any significant risk of any monetary harm to Defendants arising from the entry of injunctive relief, RH requests that the Court set a bond of no more than $10,000, as ordered in similar cases issuing similar injunctive relief. *See Ubiquiti Networks*, 2012 WL 2343670, at *17; *see also Microsoft Corp.*, 2017 WL 4536417, at *2.

### III. CONCLUSION

The Court should grant RH's motion for a TRO and other relief, and issue an order to show cause why a preliminary injunction should not be entered.

Dated: March 2, 2023                    By:  /s/ Michael J. McCue
                                              Michael J. McCue (SBN: 296425)
                                              Meng Zhong (SBN: 344124)

                                              LEWIS ROCA ROTHGERBER CHRISTIE

---

[5]    *See also Spy Optic Inc. v. The Individuals, Partnerships and Unincorporated Associations Identified on Schedule A and Does 1-10* , 2017 WL 10592133, at *2 (ordering eBay and PayPal to identify all funds transmitted to Defendants' accounts and to provide plaintiffs with data and accounting of all funds, accounts, and transactions); *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, No. CV 15-08157-BRO (Ex), 2015 WL 6680807, at *11 (C.D. Cal. Oct. 19, 2015) (granting expedited discovery to enable plaintiff to ascertain sources of the counterfeit products and learn of any pending shipments of such products); *Sas v. Sawabeh Info. Servs. Co.*, No. CV 11-04147 GAF (MANx), 2011 WL 13130013, at **6–7 (C.D. Cal. May 17, 2011) (granting expedited discovery to gather evidence for preliminary injunction to stop infringement, identify others involved in counterfeiting, and prevent destruction of evidence).