UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

RESTORATION HARDWARE, INC.,
a Delaware corporation; and RH US, LLC,
a Delaware limited liability company,

    Plaintiffs,

v.

ALIMIA LIGHT, a Chinese business entity, et al.

    Defendants.

**[PROPOSED] ORDER GRANTING PLAINTIFFS' EMERGENCY *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER, ORDER AUTHORIZING ALTERNATIVE SERVICE OF PROCESS, ORDER FOR EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED**

    In this action, Plaintiffs Restoration Hardware, Inc. and RH US, LLC (collectively, "RH") have brought claims for copyright infringement, trademark infringement and California unfair competition against Defendants (1) Alimia Light as the operator of the website at <alimialight.com> ("Alimia Light"); (2) Zhongshan Zhuosai Lighting, Co., Ltd. doing business as "Yami Lighting" and "Pop Lamps" (collectively, "Zhuosai Lighting"); (3) Shanghai ZeroTai Industrial Co. doing business as "Grand Lamps"; (4) Zhonshan Yuyi Co., Ltd. ("Wing Lighting"); (5) Zhongshan Laiting Lighting Co., Ltd. ("Oasis Lamps"); (6) Zhongshan Momo Lighting Co., Ltd. ("Momo Chandelier"); (7) Fanci Light as the operator of the website at <fancilight.com> ("Fanci Light"); (8) Cure Lighting, LLC ("Cure Lighting"); (9) Clouds Lights ("Clouds Lights"); (10) Kushigo Limited doing business as "Eric Light" and "Emma Lighting" (collectively, "Kushigo Limited"); (11) Lighting Forever as the operator of the website <lighting-forever.com> ("Lighting Forever"); (12) Hurley Light as the operator of the website <hurleylight.com> ("Hurley Light"); (13) Zhongshan Reborn Lighting Co., Ltd. ("Reborn"); (14) Showsun Lighting and Sunny Wang doing business as "Showsun Lighting" (collectively, "Showsun Lighting"); (15) Jinhua Sigma Industrial & Trading Co., Ltd. ("Sigma Living"); (16) Dyco Décor as the operator of the website <dycodecor.com> ("Dyco Décor"); (17) Ineffable Lighting as the operator for the website <ineffablelighting.com> ("Ineffable Lighting"); (18) Dekorfine as the operator of the website

<dekorfine.com> ("Dekorfine"); (19) Nimo LLC as the operator of the website <zenduce.com> ("Zenduce"); (20) Dysatu Lighting Co., Ltd. as the operator of the website <satulight.com> ("Satulight"); (21) Oclolli Limited doing business as "Mooni Lighting" ("Oclolli"); and (22) Kevin Studio as the operator of <kevinstudioinc.com> ("Kevin Studio") (all of the aforementioned parties shall collectively be referred to as "Defendants").

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Plaintiffs Restoration Hardware, Inc. and RH US, LLC (collectively, "RH") have moved the Court for: (1) an *ex parte* temporary restraining order ("TRO") enjoining Defendants from infringing RH's copyrights and trademarks and to lock certain financial accounts; (2) an order authorizing alternative services of process; (3) an order for expedited discovery; and (4) and order to show cause why the Court should not enter a preliminary injunction against the Defendants.

The Court has reviewed and considered RH's motion, the supporting declarations of Sophy Manes ("Manes Decl.") and Michael McCue ("McCue Decl.") and exhibits thereto. For the reasons set forth herein and good cause shown, RH's motion is hereby GRANTED as further set forth below.

The Court hereby makes the following findings.

1. RH is an innovative and popular luxury retailer in the home furnishings marketplace.

2. RH owns more than 90 U.S. copyright registrations, including registrations for catalogs, the <RH.com> website, and a compilation of lighting photographs. *See* Manes Decl., Ex. A ("RH Copyrighted Works").

3. RH also owns common law rights in the product names it uses for the lighting products at issue in this case: AQUITAINE, ARCACHON, BOULE DE CRISTAL, CAMINO, CANNELE, CASCADA, ECLATANT, FULCRUM, HARLOW, MACHINIST, MARIGNAN, PAUILLAC, PEARL, RAIN, RAVELLE, RHYS, SAN MARCO, SAVILE, SPIRIDON, UTILITAIRE, and WRIGHT (collectively, "RH Marks"). *See* Manes Decl., Ex. B.

4. Defendants are online lighting retailers.

5. RH alleges that Defendants are using RH Copyrighted Works and RH Marks to sell knockoffs of RH lighting products.

6. Based on the evidence provided by RH, it appears that Defendants are using RH's copyrighted photographs. *See* Manes Decl., Ex. C.

7. Based on the evidence provided by RH, it appears that Defendants are using RH Marks, or confusingly similar variations, to sell knockoffs of RH products. *See* Manes Decl., Ex. D.

## I.    EX PARTE RELIEF IS APPROPRIATE

RH is seeking a TRO on an *ex parte* basis pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and L.R. 65-1. The Court finds that *ex parte* relief is appropriate to ensure that the Defendants do not move funds to accounts outside the United States, or destroy or conceal evidence.

Providing notice to Defendants would give them the opportunity to move financial accounts (such as money on deposit from sales through PayPal) beyond the jurisdiction of this Court, rendering any monetary judgment RH may ultimately obtain hollow. *See, e.g.*, *JUUL Labs, Inc. v. Chou*, No. CV 21-3056 DSF (PDX), 2021 WL 4900374, at *11 (C.D. Cal. June 9, 2021) ("Given the deceitful nature of counterfeiting, courts in the Ninth Circuit regularly find that dissipation of assets is likely and grant asset freezes in cases involving willful counterfeiting, particularly overseas where defendants can hide assets from a potential judgment"). The Court recognizes that Defendants are located in China, and judgments from U.S. courts are typically difficult to enforce in China.[1]

---

[1] *Yee v. NIVS Intellimedia Tech. Grp., Inc.*, No. CV 11-8472 JGB (AJWx), 2013 WL 1276024, at *5 (C.D. Cal. March 25, 2013) (stating that the Chinese company whose executives are Chinese residents "bore no real risk of sanctions" given the difficulty of enforcing a U.S. judgment against a Chinese national); *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 WL 12303367, at **5-6 (C.D. Cal. Jul. 9, 2013) (finding that the plaintiff "would face significant obstacles in enforcing any judgment against the Defendants' assets in China"); *Gucci Am., Inc. v. Wang Huoqing*, No. C-09-05969 JCS,

The Ninth Circuit upholds *ex parte* TROs where notice would render further prosecution fruitless, including "situations where an alleged infringer is likely to dispose of the infringing goods before the hearing." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). For example, in *Gucci Am., Inc. v. Los Altos Boots, Inc.*, the court issued a TRO without notice because, in part, the defendant could easily conceal the counterfeit goods and related records given their location outside the U.S. *Gucci Am., Inc.*, No. CV1406680 BRO (AJWx), 2014 WL 12561613, at **3-4 (C.D. Cal. Aug. 27, 2014); s*ee also Cisco Sys.*, 2021 WL 4962661, at *4 (providing no notice when evidence showed defendant "is willfully offering and selling transceivers using counterfeit [marks] . . . and are able and likely to dispose of evidence if given advance notice of the present motion"); *Cisco Sys.*, 2020 WL 4196273, at *1 (same); *see also supra*, n.1 (collecting cases).

Here, the evidence submitted by RH demonstrates that Defendants are acting willfully, which heightens the risk that they will destroy or conceal evidence, including records and infringing goods. *See* Manes Decl. Exs. C-D; *see, e.g., Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1016 (9th Cir. 1985) ("the record indicates that Fairbanks copied virtually everything with regard to that product. It is clear that Fairbanks attempted to capitalize on the secondary meaning of "Shift Kit" in order to obtain an advantage from the good will built up by Transgo").

Accordingly, *ex parte* relief is warranted in this case.

**II.   THE COURT WILL GRANT A TRO**

The standard for issuing a TRO is identical to the standard for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). A plaintiff seeking preliminary injunctive relief must establish that: (1) "[it] is likely to succeed on the merits"; (2) "[it] is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [its] favor"; and (4) "an

---

2011 WL 31191, at *16 (N.D. Cal. Jan. 3, 2011) (noting that enforcing a judgment may be difficult in China, and compelling transfer of counterfeiter's domain names to plaintiffs).

injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### 1. RH Is Likely to Succeed on its Claims Against Defendants

The Court finds that RH is likely to succeed on the merits of its claims for copyright infringement, trademark infringement, and unfair competition under California law.

#### a. Copyright Infringement

To prevail on its copyright infringement claims, RH must (1) show ownership of the copyrights, and (2) a violation of at least one exclusive right under 17 U.S.C. § 106. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). RH satisfies both requirements. First, the Copyright Office has issued certificates of registration for RH source books, its website, and a compilation of photographs that include the RH Copyrighted Works (*See* Manes Decl. Ex. A). Registration creates a presumption of copyright validity and ownership. *See* 17 U.S.C. § 410(c).

Second, the Defendants have directly infringed RH's copyrights. Defendants have directly infringed RH's copyrights by copying and publicly displaying RH Copyrighted Works on their website in violation of 17 U.S.C. §§ 106(1) and (5). *See* Manes Decl., Ex. C.

Accordingly, RH is likely to succeed on the merits of its copyright claims against Defendants.

#### b. Trademark Infringement

To prevail on a claim for trademark infringement and unfair competition under the Lanham Act, RH must show ownership of the RH marks and that Defendants' use of the marks is likely to cause confusion, or to cause mistake, or to deceive. *See Lahoti v.*

*VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009) (*quoting KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000) (quotation omitted). *See also* 15 U.S.C. § 1125(a). The Lanham Act protects both registered and unregistered marks. *Halicki Films, LLC v. Sanderson Sales and Mktg.,* 547 F.3d 1213, 1225–26 (9th Cir. 2008). To show ownership of an unregistered mark, "the standard test of ownership is priority of use," and "the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Gathering Tree, LLC v. Symmetry Labs, Inc.,* No. 19-CV-07074-WHO, 2020 WL 3186052, at *3 (N.D. Cal. June 15, 2020) (citation omitted).

Here, RH can establish that it owns the RH Marks based on its prior use of the RH Marks in commerce. The evidence shows that RH began using each of the RH Marks prior to Defendants' first use. *See* Manes Decl., Ex. B.

In addition, RH can establish that Defendants' use of the RH Marks is likely to cause confusion. To determine whether a likelihood of confusion exists, the Ninth Circuit considers the *Sleekcraft* factors: (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (internal citations omitted).

Here, the *Sleekcraft* factors weigh in favor of RH.

The first factor (strength of the mark) favors RH because the RH Marks are strong, based on their inherent distinctiveness as applied to lighting products. The RH Marks are either arbitrary or suggestive when used in connection with lighting products. Indeed, they do not describe any characteristic or feature of the lighting products. *See* Manes Decl.¶ 5.

The second and third factors (similarity of the marks and relatedness of the products) favor RH because Defendants are using marks identical or nearly identical to the

RH Marks to advertise and sell lighting products. *See* Manes Decl., Ex. D.

The fourth factor (actual confusion) is neutral, because RH is not aware of instances of actual confusion at this early stage. Nonetheless, actual confusion is not necessary for a finding of likelihood of confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011) ("actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act") (internal citations and quotation marks omitted).

The fifth factor (marketing channels) favors RH, because RH and Defendants are all market and sell their products through the same primary marketing channels: websites. *See* Manes Decl. ¶ 8.

The sixth factor (consumer care) is neutral. Although consumers are likely to exercise care in purchasing lighting fixtures, based on Defendants' use of RH Marks and RH Copyrighted Works to sell the lighting fixtures, consumers may believe that Defendants are authorized reseller of RH's lighting fixtures. *See* Manes Decl. ¶ 9.

The seventh factor (intent) favors RH, because Defendants' use of several marks identical to the RH Marks.

The eighth factor (expansion of product lines) favors RH because Defendants are already competing to sell the same types of products. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999) ("The likelihood of expansion in product lines factor is relatively unimportant where two companies already compete to a significant extent.").

Since all of the factors favor RH or are neutral, RH is likely to succeed on the merits of its trademark infringement claim.

As for RH's parallel claim for unfair competition under California state law, the Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255,

[PROPOSED] ORDER GRANTING TRO     7
CASE NO.:
117734299.1

1262–63 (9th Cir. 1994). "Under both, the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (internal quotation marks omitted). As such, given that RH is likely to succeed on its trademark infringement claim, RH is also likely to succeed on its California unfair competition claim.

### 2. Defendants' Infringement is Likely to Cause Irreparable Injury Unless the Court Grants Injunctive Relief

If the Court does not grant injunctive relief, RH is likely to suffer irreparable injury.

As a threshold matter, with respect to RH's trademark infringement claim against Defendants, given the Court finds that RH is likely to prevail on the merits of its trademark infringement claim, then RH is entitled to a presumption of irreparable harm under the recently enacted Trademark Modernization Act of 2020, 15 U.S.C. § 1116(a). *See also Cisco Sys.*, 2021 WL 4962661, at *7 (under the Trademark Modernization Act of 2020, "a plaintiff seeking an injunction against trademark infringement 'shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success…in the case of a motion for a preliminary injunction or temporary restraining order'") (*citing* Pub. L. 116-260.); *Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, 515 F. Supp. 3d 1061, 1081 (N.D. Cal. 2021) (same); *Nintendo of Am., Inc. v. Storman*, No. CV19-7818-CBMR (AOX), 2021 WL 4772529, at *2 (C.D. Cal. Aug. 5, 2021) (same).

In addition, RH can demonstrate that the harm it is likely to suffer from infringement of its intellectual property rights is irreparable because monetary remedies are likely inadequate because the Defendants are based in China and can easily avoid enforcement of any orders. *Cisco Sys.*, 2020 WL 5199434, at *11 (finding irreparable injury given it is "difficult if not impossible to enforce U.S. judgments in China"); *Nike, Inc. v. Fujian Bestwinn (China) Indus. Co.*, 166 F. Supp. 3d 1177, 1179 (D. Nev. 2016) (finding irreparable injury for order for TRO and seizure because "it may be difficult or impossible for NIKE to recover a money judgment against" a foreign company with no physical presence in the United States). Specifically, if the Court does not order a freeze of

Defendants' U.S. financial accounts, they can drain their U.S. accounts, thereby evading the jurisdiction of the Court and leaving RH with, at best, a default judgment that cannot be enforced in China.

In addition, in the absence of injunctive relief prohibiting Defendants from infringing RH's intellectual property, RH risks loss of control over its business reputation and damage to goodwill to the extent that consumers believe that products they purchase from Defendants are authentic RH products. Courts have held that "loss of control over business reputation and damage to goodwill" constitutes irreparable injury supporting injunctive relief. *Sream, Inc. v. Sahebzada*, No. 18-CV-05673-DMR, 2019 WL 2180224, at *9 (N.D. Cal. Mar. 6, 2019), *report and recommendation adopted*, No. 18-CV-05673-RS, 2019 WL 2180215 (N.D. Cal. Mar. 28, 2019); see also *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (in copyright action, finding loss of goodwill cannot be remedied with damages, and supported finding of irreparable injury); *Ubiquiti Networks*, 2012 WL 2343670, at *15 (where defendants sold counterfeit products, finding imminent danger of irreparable injury and no adequate remedy at law, and issuing TRO as sales would likely damage plaintiff's reputation and goodwill).

Accordingly, RH is likely to suffer irreparable injury if injunctive relief is not granted.

### 3. The Balance of Equities Favors RH

A TRO will impose no legally cognizable hardship on Defendants. "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'" *Sream*, 2019 WL 2180224, at *10 (*quoting Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) (superseded on other grounds)); see also *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14-CV-04050-MEJ, 2014 WL 6788310, at *23 (N.D. Cal. Dec. 2, 2014) (disregarding claimed hardship from loss of infringing sales).

Any hardship on Defendants from the imposition of a TRO or preliminary injunction is the natural result of their own wrongdoing. At the same time, Defendants' sale of

products using RH Copyrighted Works and RH Marks risks harming RH's reputation and goodwill and creates the false impression that RH products are available from sources other than RH. This diminishes the return value that RH receives from its copyrights, trademarks, patents, and associated goodwill. Accordingly, the balance of equities strongly supports issuing a TRO and preliminary injunction in this case.

### 4. Granting Injunctive Relief Is in the Public Interest in this Case

It is in the public interest to enjoin Defendants' conduct for several reasons. Absent an injunction, U.S. consumers may be duped into purchasing knockoffs of RH products from an unknown and unaccountable foreign infringers rather than genuine RH products that are sold only by RH and that are backed by RH's customer service and return policy, product safety testing and the like.

Public policy strongly supports shutting down infringers to protect end consumers. *Neighborhood Assistance Corp. v. First One Lending Corp.*, No. SACV 12-0463 DOC (MLGx), 2013 WL 12113414, at *5 (C.D. Cal. Feb. 11, 2013). This is so because "the purpose of the Lanham Act is 'to protect the public from false and deceptive practices that create confusion in the marketplace." *Id.* (*quoting U-Haul Int'l, Inc. v. Jartran, Inc.*, 681 F.2d 1159, 1162 (9th Cir. 1982)). The Ninth Circuit has explained that "the consuming public is equally injured by an inadequate judicial response to trademark infringement," so "it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement." *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982).

In addition, Defendants' copyright infringement in this case creates a compelling public interest in protecting RH's marketable rights to its copyrighted works. *See Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2005) ("[t]he economic philosophy behind the [Copyright] [C]lause . . . is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors".)

Thus, the public interest favors granting the requested TRO.

### III. THE COURT WILL AUTHORIZE ALTERNATIVE SERVICE BY EMAIL

For defendants located in foreign countries, courts are permitted to authorize service of process "by other means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3).

The only requirements under Rule 4(f)(3) are that service be directed by the court and not prohibited by international agreement. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). "[C]ourt-directed service under Rule 4(f)(3) is as favored as service available under Rules [4(f)(1-2)]" and does not require first attempting other means. *Id.* To provide due process in this context, courts evaluate whether a service method is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 1016 (*quoting Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). In *Rio*, the Ninth Circuit agreed that service by email was appropriate, particularly where the defendant conducted its business by email. *Id.* at 1017-18.

Service by email on defendants in China is not barred by any international convention. *See Microsoft Corp. v. Goldah.com Network Tech. Co.*, No. 17-CV-02896-LHK, 2017 WL 4536417, at *4 (N.D. Cal. Oct. 11, 2017). Courts in this district have authorized email service and found that it is reasonably calculated to provide notice to foreign defendants, including defendants based in China, where receipt is confirmed, the email addresses were previously used to communicate with the plaintiffs, or the defendants operated online and used email for their businesses. *Id.* at **5-6 (affirming that email service on defendants in China was sufficient where receipt was confirmed); *Carson v. Griffin*, No. 13-CV-0520 KAW, 2013 WL 2403601, at **1-2 (N.D. Cal. May 31, 2013) (authorizing service by email where the plaintiff previously corresponded with the defendants via email); *Jenkins v. Pooke*, No. C 07-03112 JSW, 2009 WL 412987, at **2-3 (N.D. Cal. Feb. 17, 2009) (same); *Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 WL 1038752, at **1-2 (N.D. Cal. Mar. 27, 2012) (authorizing email service,

including in Hong Kong, where defendants operated online and relied on email communications for their businesses); *Cisco Sys.*, 2020 WL 4196273, at **13-14 (authorizing service by email on Chinese companies).

Here, each Defendant has provided an email address on its website for communication and sales. *See* McCue Decl. ¶¶ 2-23, Exs. A-X. As a result, service on Defendants through these email addresses is reasonably calculated to give them notice of this suit because they use these email addresses in connection with its commercial activities. *Id.*

Furthermore, email service is appropriate and necessary in the present case because of the urgency in stopping Defendants' continued infringement. At the same time, while China has signed the Hague Convention on Service, district courts have recognized that China often obstructs and substantially delays service under that process for many months. *See Micron Tech., Inc. v. United Microelectronics Corp.*, No. 17-CV- 06932-MMC, 2018 WL 6069646, at **1–2 (N.D. Cal. Nov. 20, 2018); *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 338 (S.D.N.Y. 2018).

Allowing RH to serve Defendants by email in this case is the most efficient, effective, and fastest way to provide actual notice of this lawsuit, while avoiding irreparable injury, uncertainty, and delay of requiring service in China through the Hague Convention.

## IV.  THE COURT WILL AUTHORIZE LIMITED EXPEDITED DISCOVERY

Courts have discretion to expedite discovery, particularly in cases where plaintiffs seek temporary or preliminary injunctive relief. *See* Fed. R. Civ. P. 26(d) (allowing for expedited discovery "by court order"), Advisory Comm. Note on 1993 Amendment (stating "[d]iscovery can begin earlier" and "[t]his will be appropriate in some cases, such as those involving requests for a preliminary injunction"). Expedited discovery can be granted for good cause "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party," and "good cause is frequently found in cases involving claims of infringement and unfair competition." *Semitool, Inc. v.*

*Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

Here, RH seeks expedited discovery from third parties that may hold funds due and owing to Defendants or records regarding the Defendants' financial accounts, such as from PayPal, Visa, MasterCard, American Express, and JCB. *Cisco Sys.*, 2020 WL 4196273, at *12 ("Courts in the Ninth Circuit routinely find good cause for expedited discovery to enable plaintiffs in counterfeiting cases to identify: 1) accounts used for and transactions associated with infringing sales").[2] The requested discovery will permit RH to obtain information regarding the location of Defendants' assets reachable in the United States so that RH can seek to modify the asset freeze portion of the TRO order.

Accordingly, the Court will authorize RH to conduct expedited discovery.

## VI.   THE COURT WILL SET A BOND OF $10,000

"The district court is afforded wide discretion in setting the amount of the bond . . . and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (internal citations omitted); *see also Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, No. 18-CV-06663-TSH, 2019 WL 1586776, at *17 (N.D. Cal. Apr. 12, 2019) ("The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."); *Cuviello v. City of Oakland*, No. C 06- 05517 MHP (EMC), 2007 WL 2349325, at *8 (N.D. Cal. Aug. 15, 2007) (recommending no bond be required in part because there was no proof of likelihood of harm to the party enjoined). Here, the Court will order a bond

---

[2] *See also Spy Optic*, 2017 WL 10592133, at *2 (ordering eBay and PayPal to identify all funds transmitted to Defendants' accounts and to provide plaintiffs with data and accounting of all funds, accounts, and transactions); *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, No. CV 15-08157-BRO (Ex), 2015 WL 6680807, at *11 (C.D. Cal. Oct. 19, 2015) (granting expedited discovery to enable plaintiff to ascertain sources of the counterfeit products and learn of any pending shipments of such products); *Sas v. Sawabeh Info. Servs. Co.*, No. CV 11-04147 GAF (MANx), 2011 WL 13130013, at **6–7 (C.D. Cal. May 17, 2011) (granting expedited discovery to gather evidence for preliminary injunction to stop infringement, identify others involved in counterfeiting, and prevent destruction of evidence).

in the amount of $10,000.

**TEMPORARY RESTRAINING ORDER**

Based on the foregoing points, the Court hereby orders as follows:

1. The Court hereby enjoins each of the Defendants and their respective officers, agents, servants, employees and all other persons acting in active concert and participation with them from:

    a. Copying, distributing or publicly displaying any of the RH Copyrighted Works, including removal of the links identified in Exhibit C to Manes Decl.;

    b. Using any of the RH Marks or any marks confusingly similar thereto, in commerce in connection with the manufacturing, offering for sale, or sale of any lighting products, including removal of the links identified in Exhibit D to Manes Decl.;

The effective date of the above injunction shall begin upon service on Defendants of this Order and posting of the bond set forth below.

2. Immediately upon receipt of this Order, any financial institution, bank, payment provider, payment processing service provider, money transmission service, third-party processor, or other financial institution (including, but not limited to, MasterCard, VISA, American Express, Discover, PayPal, Inc., Alipay, and any correspondent, issuing, or member bank or account) with financial accounts in the name of or under the control of Defendants, shall freeze or take other action necessary to prevent any transfer or withdrawal of funds or assets from the account, until further order of the Court and provide notice to RH's counsel of compliance with this Order as well as an accounting of the balance, assets or money held in the account and the names of the account holders and contact persons. This freeze specifically applies to the Paypal account used by Defendants as follows:

| Defendant | Account |
|---|---|
| Hurley Light | Dysatu Lighting Co., Ltd.<br><br>info@cydesigngroup.com |
| Dyco Decor | Dysatu Lighting Co., Ltd.<br><br>info@cydesigngroup.com |
| Decormote | Decormote<br><br>support@decormote.com |
| Dekorfine | Janedecor Inc.<br><br>support@dekorfine.com |
| Zenduce | Nimo LLC<br><br>support@zenduce.com |

## ORDER GRANTING ALTERNATIVE SERVICE OF PROCESS

RH is hereby authorized to serve the summonses and Complaint, Motion for TRO, this Order, and any other pleadings or documents filed in this case, on Defendants by sending true copies thereof by email to addresses below and that such service be deemed sufficient service of process.

| Defendants | Email Service |
|---|---|
| Alimia Light | service@alimialight.com |
| Zhongshan Zhuosai Lighting Co., Ltd. | support@yami-lighting.com<br><br>support@poplamps.com |
| Grand Lamps | support@grandlamps.com |
| Wing Lighting | support@winglightings.com |
| Oasis Lamps | support@oasislamps.com |
| Momo Chandelier | monet@momochandelier.com |
| Fanci Light | support@fancilight.com |
| Cure Lighting | support@curelighting.com |

[PROPOSED] ORDER GRANTING TRO          15
CASE NO.:
117734299.1

| | | |
|---|---|---|
| 1 | Clouds Lights | support@cloudslights.com |
| 2 | Kushigo Limited | support@ericlightus.com |
| 3 | | support@emmalighting.com |
| 4 | Lighting Forever | info@lighting-forever.com |
| 5 | Hurley Light | info@cydesigngroup.com |
| 6 | | info@hurleylight.com |
| 7 | Reborn Lighting | sales@rebornlighting.com |
| 8 | Showsun Lighting | sales@showsunlighting.com |
| 9 | Sigma Living | info@jhsigma.com |
| 10 | Dyco Décor | info@cydesigngroup.com |
| 11 | | admin@dycodecor.com |
| 12 | Decormote | support@decormote.com |
| 13 | Ineffable Lighting | support@ineffablelighting.com |
| 14 | Dekorfine | support@dekorfine.com |
| 15 | Zenduce | support@zenduce.com |
| 16 | Satulight | info@satulight.com |
| 17 | Mooni Lighting | sales@moonilighting.com |
| 18 | Kevin Studio | support@kevinstudioinc.com |

**ORDER GRANTING EXPEDITED DISCOVERY**

Within three business days after receipt of this Order, any third party that has information or documents about Defendants shall produce to RH expedited discovery, including copies of all documents and records in such person's or entity's possession, custody, or control relating or referring to: (1) the names, addresses, and other contact information, including any and all associated email addresses, of any of the Defendants; (2) any financial accounts owned or controlled by any of the Defendants and an accounting of the balance held in the account; (3) the existence and location of any money, assets, balance, receivable, or other money payable, owned, held, or due to Defendants.

**ORDER TO SHOW CAUSE**

Defendants are hereby ordered to show cause before this Court on the ___ day of _____ at _____ ___.m., why a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, should not be issued.

Plaintiffs shall serve this Order and all supporting pleadings and papers on Defendants within 10 days of this Order, by _____.

**IT IS SO ORDERED.**

DATED: _____, 2023

_____
United States District Court Judge

[PROPOSED] ORDER GRANTING TRO           17
CASE NO.:
117734299.1