1
2
3
4          **UNITED STATES DISTRICT COURT**
5          **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 6  RESTORATION HARDWARE, INC., a Delaware corporation; and RH US, LLC, a Delaware limited liability company,<br><br>8      Plaintiffs,<br><br>9  v.<br><br>10<br>11  ALIMIA LIGHT, a Chinese entity; ZHONGSHAN ZHUOSAI LIGHTING, CO., LTD., a Chinese entity; SHANGHAI ZEROTAI INDUSTRIAL CO., a Chinese entity; ZHONSHAN YUYI CO., LTD., a Chinese entity; ZHONGSHAN LAITING LIGHTING CO., LTD., a Chinese entity; ZHONGSHAN MOMO LIGHTING CO., LTD., a Chinese entity; FANCI LIGHT, a Chinese entity; CURE LIGHTING, LLC, a Chinese entity; CLOUDS LIGHTS, a Chinese entity; KUSHIGO LIMITED, a Chinese entity; LIGHTING FOREVER, a Chinese entity; HURLEY LIGHT, a Chinese entity; ZHONGSHAN REBORN LIGHTING CO. LTD., a Chinese entity; SHOWSUN LIGHTING, a Chinese entity; SUNNY WANG, an individual residing in China; JINHUA SIGMA INDUSTRIAL & TRADING CO., LTD., a Chinese entity; DYCO DÉCOR, a Chinese entity; INEFFABLE LIGHTING, a Chinese entity; DEKORFINE, a Chinese entity; NIMO LLC, a Wyoming LLC; Dysatu Lighting Co., LTD., a Chinese entity; and OCLOLLI LIMITED, a Chinese entity; Kevin Studio, a Chinese entity; and DOES 1-10,<br><br>      Defendants. | Case No.  4:23-cv-00948-HSG<br><br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |

122188605.2

# INTRODUCTION

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, Plaintiffs Restoration Hardware, Inc. and RH US, LLC (collectively, "RH") seek default judgment and entry of statutory damages, a permanent injunction enjoining (1) Alimia Light as the operator of the websites at <alimialight.com>, <puslighting.com>, and <alimialighting.com> ("Alimia Light"); (2) Zhongshan Zhuosai Lighting, Co., Ltd. doing business as "Yami Lighting" and "Pop Lamps" (collectively, "Zhuosai Lighting"); (3) Shanghai ZeroTai Industrial Co. doing business as "Grand Lamps" ("Grand Lamps"); (4) Zhonshan Yuyi Co., Ltd. doing business as Wing Lighting ("Wing Lighting"); (5) Zhongshan Laiting Lighting Co., Ltd. doing business as Oasis Lamps ("Oasis Lamps"); (6) Zhongshan Momo Lighting Co., Ltd. doing business as Momo ("Momo Chandelier"); (7) Fanci Light as the operator of the websites at <fancilight.com> and <fancilighting.com> ("Fanci Light"); (8) Cure Lighting, LLC ("Cure Lighting"); (9) Clouds Lights ("Clouds Lights"); (10) Kushigo Limited doing business as "Eric Light" and "Emma Lighting" (collectively, "Kushigo Limited"); (11) Lighting Forever as the operator of the website <lighting-forever.com> ("Lighting Forever"); (12) Zhongshan Reborn Lighting Co., Ltd. ("Reborn"); (13) Showsun Lighting and Sunny Wang doing business as "Showsun Lighting" (collectively, "Showsun Lighting"); (14) Jinhua Sigma Industrial & Trading Co., Ltd. ("Sigma Living"); (15) Ineffable Lighting as the operator of the websites <ineffablelighting.com> and <ineffable-lighting.com> ("Ineffable Lighting"); (16) Nimo LLC as the operator of the website <zenduce.com> ("Zenduce"); (17) Oclolli Limited doing business as "Mooni Lighting" ("Oclolli"); and (18) Kevin Studio, the operator of the websites <kevinstudioinc.com> and <kevinstudiolives.com> ("Kevin Studio") (collectively "Defendants") from infringing RH's intellectual property, an order disabling the websites and online storefronts that Defendants are using to infringe RH's intellectual property, and other relief as described below. The Court hereby GRANTED the Motion for Default Judgment on terms as set forth below.

## I. STATEMENT OF FACTS

The following facts are set forth in the Complaint and deemed true for the purposes of default judgment.

### A. Background on RH

RH is an innovative and popular luxury retailer in the home furnishings marketplace. (Compl. ¶ 57.)[1] RH offers a wide variety of luxury home furnishings, including furniture, lighting, textiles, and other products. (*Id.*) RH was founded in Eureka, California, in 1980. (*Id.*) Over the past 42 years, RH has grown to approximately 68 retail stores (known as "galleries") in the U.S. and Canada. (*Id.*) RH sells its products (including the lighting products at issue in this case) through its galleries, catalogs (known as "source books"), and through its website at <RH.com>. (*Id.*)

RH is well known for using artistic photographs to promote its products, including its lighting products. (Compl. ¶ 58.) RH spends a substantial amount of time, money, and effort staging and photographing its products. (*Id.*) RH's source books and websites feature thousands of photographs featuring RH's products in upscale and refined settings. (*Id.*) RH's photographs and products are frequently featured in design, home décor, and lifestyle publications, such as *Architectural Digest*, *Elle Décor*, *InStyle*, *Interiors*, *Luxe* and *Veranda*. (*Id.*)

### B. RH's Copyrights in Photographs

RH owns copyrights in the product photographs. (Compl. ¶ 59.) RH currently owns more than 90 U.S. copyright registrations, including registrations for source books, the <RH.com> website, and a compilation of lighting photographs, which collectively cover all of the photographs at issue in this case. (*Id.*) True and correct copies of registrations for these works are attached as Exhibit A to the Complaint ("RH Copyrighted Works"). Based on these registrations, RH owns the exclusive right to copy, distribute and publicly display the RH Copyrighted Works. (*Id.*)

---

[1] All factual allegations in the Complaint must be accepted as true, except those relating to damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

### C. Trademark Rights in Lighting Product Names

RH owns common law rights in the product names it uses for the lighting products at issue in this case: AQUITAINE, ARCACHON, BOULE DE CRISTAL, CAMINO, CANNELE, CASCADA, ECLATANT, FULCRUM, HARLOW, MACHINIST, MARIGNAN, PAUILLAC, PEARL, RAIN, RAVELLE, RHYS, SAN MARCO, SAVILE, SPIRIDON, UTILITAIRE, and WRIGHT. (Compl. ¶ 60.) Furthermore, RH owns common law as well as Federal trademark registrations for its RESTORATION HARDWARE Mark (collectively, with the product names, "RH Marks"). (*Id.*) As a result of RH's use of these marks in commerce, consumers have come to associate the marks with high-quality lighting products from RH. (*Id.*) A table identifying the RH Marks with their dates of first use in commerce is attached as Exhibit B to the Complaint. Based on its continuous use of the RH Marks, RH owns exclusive common law rights to use the RH Marks in connection with the sale of lighting products in the U.S. (*Id.*)

### D. Defendants' Infringement of RH's Intellectual Property Rights

Defendants are foreign companies operating online stores that are using RH's Copyrighted Works and RH Marks to sell knockoffs of RH products to the U.S. Market. (Compl. ¶ 2.) They are engaging in blatant infringement of RH's intellectual property rights. (*Id.*) RH compiled all instances of copyright infringement of the RH Copyrighted Works into Exhibit C Complaint and all instances of infringement of the RH Marks into Exhibit D of the Complaint. In connection with this Motion, RH submitted updated charts that identify additional infringing websites and storefronts operated by Defendants. (Declaration of Meng Zhong in Support of Motion for Default Judgment ("Zhong Decl."), Exs. A and B.)

### E. Defendants Ignored the Court's TRO Order, And the Court Entered a Website/Storefront Shutdown Order

At the outset of this case, the Court granted RH a TRO ordering Defendants to cease infringement of RH's intellectual property rights. (ECF No. 23 at 6.) In the TRO entered on May 24, 2023, the Court enjoined Defendants from infringing RH's intellectual property rights:

> The Court enjoins Defendants and their respective officers, agents, servants, employees, and all persons acting in active concert and participation with them from:
>
> (a) copying, distributing, or publicly displaying any of Plaintiffs' copyrighted works, including removal of the links identified in Dkt. No. 1-4.
>
> (b) Using any of the RH Marks or any marks confusingly similar thereto, in commerce in connection with the manufacturing, offering for sale, or sale of any lighting products, including removal of the links identified in Dkt. No. 1-5.

(ECF No. 23 at 6.) On May 25, 2023, RH served the TRO on Defendants. (Doc. # 26.) The Court's TRO Order required Defendants to submit a response to the Motion for Preliminary Injunction by June 16, 2023. (*Id.* at 8.)

Prior to the Preliminary Injunction hearing, RH reviewed all Defendants' websites to determine their compliance with the TRO. Research revealed that most of the Defendants did not comply in that they are continuing to use RH Copyrighted Works or RH Marks. (ECF No. 30.) Accordingly, the Court entered a preliminary injunction order shutting down the non-compliant Defendants' websites until further order of the Court. (ECF No. 38.)

## II.  DISCUSSION

### A.  Legal Standard

Federal Rule of Civil Procedure 55(b) permits a default judgment following the entry of default by the clerk under Rule 55(a). When the requested relief is anything other than a sum certain or a sum that can be made certain by computation, the party must apply to the court for a default judgment after entry of default. Fed. R. Civ. P. 55(b)(1) - (2). The choice as to whether a default judgment should be entered lies within the discretion of the trial court. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default alone does not entitle a plaintiff to a court-ordered judgment. *See id.* Instead, the Ninth Circuit has determined that a district court should look at seven discretionary factors before rendering a decision on a motion seeking a default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

///

These factors are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.*

Once the clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The issuance of a permanent injunction, an award of monetary damages, and recovery of attorneys' fees and costs are the proper subjects of a default judgment. *See Philip Morris USA, Inc. v. Castworld Prods.*, Inc., 219 F.R.D. 494, 501-03 (C.D. Cal. 2003).

**B.  The Eitel Factors Favor Entry of Default Judgment**

    **i.  RH Would Be Prejudiced If the Motion for Default Judgment Was Denied**

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if a default judgment is not entered. *See PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, Defendants failed to appear and defend against this action. In the absence of a default judgment, RH will suffer prejudice because they will not be allowed to litigate their claim and will be effectively denied all relief. *See, e.g., O'Brien v. United States*, No. 2:07-cv-00986-GMN-GWF, 2010 U.S. Dist. LEXIS 101941, at *11 (D. Nev. Sept. 9, 2010) ("Villamor has failed to appear and defend this suit, delaying the judicial process. Without a default judgment[,] the United States cannot have a final resolution of its tax claims, and thus will suffer prejudice."); *Kloepping v. Fireman's Fund*, No. C 94-2684 THE, 1996 U.S. Dist. LEXIS 1786, at *14 (N.D. Cal. Feb. 13, 1996) ("[P]laintiff has made good faith efforts to negotiate with defendant to settle the case, and has had to expend more time, effort, and money in order to recover the money that plaintiff has lost. Defendant's history of evasive tactics and willful disregard of this action leaves this Court

/ / /

with great pessimism as to defendant's ability to cooperate with the plaintiff should relief be denied."). This factor weighs in favor of judgment by default.

### ii. The Copyright And Trademark Claims Are All Meritorious

The second and third *Eitel* factors favor default judgment where the complaint sufficiently states a claim for relief under the "liberal pleading standards embodied in Rule 8" of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8; *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978).

In this case, RH brought claims for copyright infringement, trademark infringement, and unfair competition under California state law. All of these claims have merit, as demonstrated by the previously issued preliminary injunctions against Defendants. (ECF Nos. 34.) These are discussed here again.

To prevail on its copyright infringement claims (Count I), RH must (1) show ownership of the copyrights, and (2) a violation of at least one exclusive right under 17 U.S.C. § 106. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). RH can satisfy both requirements. First, the Copyright Office has issued certificates of registration for RH source books and website that include the RH Copyrighted Works shown in Exhibit A of the Complaint. (*See* Compl., Ex. A.) Registration creates a presumption of copyright validity and ownership. *See* 17 U.S.C. § 410(c). Second, all of the Defendants have directly infringed RH's copyrights, as evidenced by the allegations, side-by-side images, and lengthy exhibits detailing Defendants' copying of RH's Copyrighted Works. (*See* Compl. ¶¶ 61-104, & Ex. C.)

To prevail on a claim for trademark infringement under the Lanham Act (Count II), RH must show ownership of the RH Marks and that Defendants' use of the marks or marks similar thereto is likely to cause confusion, or to cause mistake, or to deceive. *See Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009) (*quoting KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000) (quotation omitted). *See also* 15 U.S.C. §§ 1114, 1125(a).

1. Here, RH owns the RH Marks based on its prior use of the RH Marks in commerce, as well as its federal trademark registrations for the RESTORATION HARDWARE mark. RH began using each of the RH Marks prior to Defendants' first use. (Compl. ¶¶ 60, 117 & Ex. B (showing the date of first use for each of the RH Marks).) Furthermore, Defendants' use of the RH Marks is likely to cause confusion as alleged and as shown in side-by-side comparisons of the usage of the marks by Defendants demonstrating the near identical use of the RH Marks (sometimes, alongside use of RH's copyrighted photographs). (Compl. ¶ 61-104 & Ex. D.) As for RH's parallel claim for unfair competition under California state law (Count III), the Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). "Under both, the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (internal quotation marks omitted).

In sum, RH has alleged *prima facie* claim for all of its claims against Defendants. Therefore, the second and third *Eitel* factors favor entry of a default judgment.

### C. RH Should Be Awarded Statutory Damages

Under the fourth *Eitel* factor, the court considers "the amount of money at stake in relation to the seriousness of Defendants' conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. "If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted." *Landstar Ranger, Inc. v. Parth Enters.*, No. 09-01426 MMM (AJWx), 2010 U.S. Dist. LEXIS 79914, at *10-11 (C.D. Cal. July 19, 2010).

RH seeks and award of statutory damages under the Copyright Act. Under Section 504(b) of the Copyright Act, RH is entitled to actual damages for copyright infringement. In the alternative, at a copyright plaintiff's election, Section 504 of the Copyright Act allows the Court to assess statutory damages for each work for which the copyright has been

1  infringed, in a sum of not less than $750 or more than $30,000 as the court considers just.
2  17 U.S.C. § 504(c)(1). In addition, if the infringement was committed willfully, the statutory
3  damages may increase to $150,000. 17 U.S.C. § 504(c)(2).

Statutory damages "are recoverable without regard to the existence or provability of actual damages." *New Form, Inc. v. Tekila Films, Inc.*, 357 F. App'x 10, 11 (9th Cir. 2009). "[S]tatutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008). A statutory damages award within the limits prescribed by Congress is appropriate "[e]ven for uninjurious and unprofitable invasions of copyright." *New Form*, 357 Fed. Appx. at 11 (*quoting F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952). Unlike actual damages, statutory damages have a punitive purpose "to sanction and vindicate the statutory policy of discouraging infringement." *Los Angeles News Service v. Reuters Television Intern., Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998).

In this case, Defendants' infringement is willful. RH allege Defendants copied hundreds of RH's Copyrighted Works, along with RH Marks, to sell knockoffs of RH's lighting products. (Compl. ¶¶ 61-104 & Exs. C and D.) Nonetheless, RH only asks that the Court award the maximum amount of $30,000 in statutory damages for non-willful infringement per work. Given the small amount RH seeks in comparison to the actual range of statutory damages, this supports entry of default. *See, e.g.*, *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008) (finding that seeking maximum amount of statutory range under non-willful infringement despite the infringement being willful meant the amount of money at stake was "relatively small" and supported entry of default).

Because this case involves eleven registered copyrighted works (Compl., Ex. A), the total amount of statutory damages per Defendant[2] should be **$330,000**.

---

[2] For Showsun Lighting, which is defined to include both Showsun Lighting (the company) and Mr. Sunny Wang (the company representative, Compl. ¶ 20), RH seeks only one statutory damages award of $330,000 that will apply them both, jointly and severally liable. *Restoration Hardware, Inc. v. Sichuan Wei Li Tian Xia Network Tech. Co.*, No. 22-CV-03054-JSC, 2023 WL 2815358, at *8 (N.D. Cal. Apr. 5, 2023) (awarding one

### D. There Is No Factual Dispute Precluding Entry of Default

The fifth *Eitel* factor considers the possibility of a dispute as to any material fact in the case. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. As noted above, upon entry of default, all factual allegations of the Complaint, except those relating to the amount of damages, are taken as true. *TeleVideo Systems*, 826 F.2d at 917-918; *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Given the sufficiency of the Complaint and the fact that RH's allegations must be accepted as true, there can be no dispute of material fact that would preclude default judgment. *See Kloepping*, 1996 U.S. Dist. LEXIS 1786, at *11 ("[P]laintiff's presumptively accurate factual allegations leave little room for dispute. In addition, . . . the Court also notes that defendant had the opportunity to dispute the facts alleged, but has avoided and utterly failed to respond to plaintiff's allegations."). Accordingly, this factor also weighs in favor of judgment by default.

### E. Defendants' Failure to Answer Was Not the Result of Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. A defendant's conduct is culpable, rather than excusable, if the defendant received actual or constructive notice of the filing of the action and failed to answer. *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987).

Here, Defendants were served the Complaint via the email address they used to conduct business, as authorized by the Court. (ECF No. 26.) For defendants located in foreign countries, courts are permitted to authorize service of process "by other means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). The only requirements under Rule 4(f)(3) are that service be directed by the court and not prohibited by international agreement. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002).

Service by email on defendants in China is not barred by any international convention. *See Microsoft Corp. v. Goldah.com Network Tech. Co.*, No. 17-CV-02896-LHK, 2017 WL 4536417, at *4 (N.D. Cal. Oct. 11, 2017). Additionally, courts in this district

---

statutory damages award for each group of defendants who are jointly and severally liable for the same infringement).

have authorized email service and found that it is reasonably calculated to provide notice to foreign defendants, including defendants based in China. *See Jenkins v. Pooke*, No. C 07-03112 JSW, 2009 WL 412987, at **2-3 (N.D. Cal. Feb. 17, 2009); *Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 WL 1038752, at **1-2 (N.D. Cal. Mar. 27, 2012) (authorizing email service, including in Hong Kong, where defendants operated online and relied on email communications for their businesses); *Cisco Sys.*, 2020 WL 4196273, at **13-14 (authorizing service by email on Chinese companies).

Here, the Defendants provided email addresses on their website for communication and sales. ECF No. 16; *Facebook*, 2012 WL 1038752, at **1-2 (authorizing email service, including in Hong Kong, where defendants operated online and relied on email communications for their businesses). Allowing Plaintiffs to serve Defendants by the Defendants' own preferred method of communication in this case is the most efficient, effective, and fastest way to provide actual notice of this lawsuit, while avoiding irreparable injury and uncertainty. *See Rio Properties*, 284 F.3d at 1018 ("If any method of communication is reasonably calculated to provide RII with notice, surely it is email—the method of communication which RII utilizes and prefers").

Additionally, Defendants were also served with the Court's TRO and preliminary injunction order. (ECF Nos. 26, 35, 39.) Given the multiple times Defendants were notified of this case, there is no possibility that Defendants were unaware of this action. Defendants' disregard for this litigation was not due to inadvertence or excusable neglect. As such, this factor weighs in favor of default judgment.

### F.  Although the Federal Rules Generally Prefer Decisions on the Merits, Defendants Have Made Decision on the Merits Impossible

The seventh *Eitel* factor considers the public policy that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. While this public policy generally favors a decision on the merits, a default judgment is appropriate where a defendant deliberately neglects to wage a defense, as is the case here. *See PepsiCo*, 238 F. Supp. at 1177 ("Defendant's failure to answer Plaintiff's Complaint makes a decision on

the merits impractical, if not impossible").

Here, as a matter of judicial economy, and in view of the other *Eitel* factors, it makes no sense to drag this litigation out any longer or continue to congest this Court's docket with a case that is not being defended. Under these circumstances a default judgment is entirely appropriate despite the public policy favoring the resolution of disputes on the merits.

\*\*\*

Application of the various *Eitel* factors to this case mandates default judgment against Defendants.

## III.     RELIEF SOUGHT

### A.     <u>A Permanent Injunction and Disabling Defendants' Domain Names Should be Ordered</u>

A party seeking a permanent injunction must establish the following: (1) actual success on the merits; (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiff; and (4) advancement of the public interest. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008) (citation omitted).

Here, a permanent injunction to cease infringing RH's intellectual property rights is warranted because RH has achieved "actual success on the merits" through Defendants' default. Further, RH is likely to suffer irreparable injury because, absent injunctive relief, Defendants' infringement of RH's intellectual property rights is likely to continue and there is simply no other effective remedy to stop the infringement. Moreover, with respect to RH's trademark infringement claim, given RH's success on the claim, RH is entitled to a *presumption* of irreparable harm under the recently enacted Trademark Modernization Act of 2020, 15 U.S.C. § 1116(a). As such, RH seeks a permanent injunction consistent with the previously entered preliminary injunction to enjoin further infringement of RH's intellectual property rights. (*See* ECF Nos. 34 and 38.)

///

1    Additionally, RH seeks an order to disable the websites and storefronts used to proliferate the infringement of RH's intellectual property because this is the only effective remedy left to RH.

Under the Lanham Act, 15 U.S.C. § 1116, the Copyright Act, 17 U.S.C. § 502, and the Court's inherent authority, the Court may order parties to take action to cease infringing. Specifically, the Court has the authority to order that domain names be disabled, which necessarily requires cooperation from domain name registrars, registries, and online third-party websites (like Alibaba). *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, No. 5:20-CV-04773-EJD, 2020 WL 5199434, at *12 (N.D. Cal. Aug. 17, 2020) (ordering "Defendants' Domain Names automatically redirect to a website that provides notice of and access to filings in this action or, alternatively, disable such websites"); *D.light Design, Inc. v. Boxin Solar Co.*, No. C-13-5988-EMC, 2014 WL 11397885, at *4 (N.D. Cal. Apr. 4, 2014) (granting order to expand preliminary injunction to include order that "the domain name registries . . . temporarily disable these domain names); *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.,* No. 5:20-CV-04773-EJD, 2020 WL 4196273, at *15 (N.D. Cal. July 20, 2020) (TRO order ordering "any Internet store or online marketplace platform, including, but not limited to, iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, Facebook, and Dhgate (collectively, "eCommerce Websites") shall disable and be restrained from providing any services or payment to any Restrained Party…").

Here, it appears the only effective remedy against Defendants' infringement is to disable the website and storefronts where the infringement is occurring, as has been done in other cases *Chanel Inc. v. Yang*, No. C 12-4428 PJH, 2013 WL 5755217, at *12 (N.D. Cal. Oct. 21, 2013) (ordering domain name Registry to transfer or disable websites used to sell counterfeit goods); *Chanel, Inc. v. US880*, No. C 10-02601 PJH (JSC), 2011 WL 13244270, at *3 (N.D. Cal. July 5, 2011), *report and recommendation adopted*, No. C 10-2601 PJH, 2011 WL 13243838 (N.D. Cal. July 28, 2011) (ordering shutdown of websites used to sell products bearing plaintiff's trademarks).

Indeed, no other remedy is available. The Defendants reside in China and have no

presence in the United States. (Compl. ¶¶ 32-53.) Having no domestic presence and no identifiable domestic assets, it will be difficult or impossible for RH to enforce a money judgment against any Defendants in this case. Thus, RH's harm is irreparable because monetary remedies are inadequate, and injunctive relief may be the only type of effective relief that RH will obtain. *Ohio Oil Co. v. Conway*, 279 U.S. 813, 814 (1929) (finding irreparable injury when there was no effective remedy to recover money); *Nike, Inc. v. Fujian Bestwinn (China) Indus. Co.*, 166 F. Supp. 3d 1177, 1179 (D. Nev. 2016) (finding irreparable injury for order for TRO and seizure because 'it may be difficult or impossible for NIKE to recover a money judgment against" a foreign company with no presence in the United States).[3]

The balance of harms and the public interest both weigh in RH's favor. RH has expended substantial sums of time and money creating its intellectual property (Compl. ¶ 58), and any harm to Defendants in forcing it to comply with the requirements of the law merits little equitable consideration. Similarly, the public interest lies in favor of upholding intellectual property interests in trademarks and copyright.

Finally, to balance out any possible prejudice to Defendants from having their website/storefront disabled, the Court will allow Defendants to appear at any time before the Court and demonstrate they will comply with the Court's order to cease infringing RH's intellectual property rights. If Defendants show this in a satisfactory manner, the Court will relieve Defendants from that portion of the permanent injunction.

### B.  The Court Will Issue Statutory Damages of $330,000 per Defendant

"Statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not

---

[3] *See also, Robert Bosch, LLC v. Pylon Mfg. Corp*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 04-32, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007), *vacated and remanded on other grounds*, 521 F.3d 1351 (Fed. Cir. 2008) (finding irreparable harm where "all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages")); *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction where "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 256 (S.D.N.Y. 2006) (granting preliminary injunction where defendant was largely based abroad).

disclosed." *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008). An award of statutory damages should "not merely compel[ ] restitution of profit and reparation for injury but also . . . discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952). As indicated above, RH seeks statutory damages for $330,000 per Defendant, which the Court will grant.

## IV.     CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiffs shall take judgment against Defendant, and further that:

A.     Pursuant to 17 U.S.C. § 504, each Defendant group (1) Alimia Light as the operator of the websites at <alimialight.com>, <puslighting.com> and <alimialighting.com> ("Alimia Light"); (2) Zhongshan Zhuosai Lighting, Co., Ltd. doing business as "Yami Lighting" and "Pop Lamps" (collectively, "Zhuosai Lighting"); (3) Shanghai ZeroTai Industrial Co. doing business as "Grand Lamps" ("Grand Lamps"); (4) Zhonshan Yuyi Co., Ltd. doing business as Wing Lighting ("Wing Lighting"); (5) Zhongshan Laiting Lighting Co., Ltd. doing business as Oasis Lamps ("Oasis Lamps"); (6) Zhongshan Momo Lighting Co., Ltd. doing business as Momo ("Momo Chandelier"); (7) Fanci Light as the operator of the websites at <fancilight.com> and <fancilighting.com> ("Fanci Light"); (8) Cure Lighting, LLC ("Cure Lighting"); (9) Clouds Lights ("Clouds Lights"); (10) Kushigo Limited doing business as "Eric Light" and "Emma Lighting" (collectively, "Kushigo Limited"); (11) Lighting Forever as the operator of the website <lighting-forever.com> ("Lighting Forever"); (12) Zhongshan Reborn Lighting Co., Ltd. ("Reborn"); (13) Showsun Lighting and Sunny Wang doing business as "Showsun Lighting" (jointly and severally); (14) Jinhua Sigma Industrial & Trading Co., Ltd. ("Sigma Living"); (15) Ineffable Lighting as the operator of the websites <ineffablelighting.com> and <ineffable-lighting.com> ("Ineffable Lighting"); (16) Nimo LLC as the operator of the website <zenduce.com> ("Zenduce"); (17) Oclolli Limited doing business as "Mooni Lighting" ("Oclolli"); and (18) Kevin Studio, the operator of the websites <kevinstudioinc.com> and <kevinstudiolives.com> ("Kevin Studio") is hereby ordered to pay to Plaintiffs statutory damages in the amount of **$330,000.00.**

B.  The Court hereby orders PayPal, Inc. to release any money contained in the following PayPal accounts to Plaintiffs in partial satisfaction of the aforementioned judgment:

1.  The account previously frozen by the Court for Defendant Nimo LLC using the support@zenduce.com email account.

C.  The Court permanently enjoins each of the Defendants and their respective officers, agents, servants, employees and all persons acting in active concert and participation with them from:

1.  Copying, distributing, or publicly displaying any of the RH Copyrighted Works, including removal or disabling of all website links identified in Exhibit A to Zhong Decl.; and

2.  Using any of the RH Marks, or any marks confusingly similar thereto, in commerce in connection with the manufacturing for sale, or sale of any lighting products, including removal or disabling of all website links identified in Exhibit B to Zhong Decl.

D.  ORDERED that within three (3) days of receipt of this Order, the following registrars and the registry Verisign, Inc. for the following domain names are to disable these domain names, through a registry hold or otherwise, and make them inactive and non-transferable pending further order of the Court:

| Domain Name | Registrar |
| --- | --- |
| Alimialight.com | eName Technology Co., Ltd. |
| Puslighting.com | Hong Kong Juming Network Technology Co., Ltd. |
| Alimialighting.com | eName Technology Co., Ltd. |
| Yami-lighting.com | Alibaba Cloud Computing (Beijing) Co., Ltd. |
| Yamilightings.com | Alibaba Cloud Computing Ltd. d/b/a HiChina (www.net.cn) |

15
[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION DEFAULT JUDGMENT
CASE NO.: 4:23-cv-00948-HSG
122188605.2

| Domain Name | Registrar |
|---|---|
| Grandlamps.com | eName Technology Co., Ltd. |
| Winglightings.com | NameSilo, LLC |
| Wing-lighting.com | NameCheap, Inc. |
| Oasislamps.com | Alibaba Cloud Computing Ltd. d/b/a HiChina |
| Oasislampus.com | Alibaba Cloud Computing Ltd. d/b/a HiChina (www.net.cn) |
| Poplamps.com | GoDaddy.com, LLC |
| Fancilight.com | NameCheap, Inc. |
| Fancilighting.com | NameCheap, Inc. |
| Curelighting.com | NameSilo, LLC |
| Cloudslights.com | Alibaba Cloud Computing Ltd. d/b/a HiChina |
| Cloudslamps.com | Alibaba Cloud Computing Ltd. d/b/a HiChina (www.net.cn) |
| Ericlightus.com | Alibaba Cloud Computing Ltd. d/b/a HiChina |
| Ericlights.com | Alibaba Cloud Computing Ltd. d/b/a HiChina (www.net.cn) |
| Emmalighting.com | Alibaba Cloud Computing Ltd. d/b/a HiChina |
| Emmalightings.com | Alibaba Cloud Computing Ltd. d/b/a HiChina (www.net.cn) |
| Lighting-forever.com | Hosting Concepts B.V. d/b/a Registrar.eu |
| Rebornlighting.com | FastDomain Inc. |
| Showsunlights.com | Xin Net Technology Corporation |
| JHSigmafurniture.com | Alibaba Cloud Computing Ltd. d/b/a HiChina |
| Ineffablelighting.com | NameSilo, LLC |
| Ineffable-lighting.com | NameCheap, Inc. |

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION DEFAULT JUDGMENT
CASE NO.: 4:23-cv-00948-HSG
122188605.2

| Domain Name | Registrar |
|---|---|
| Moonilighting.com | Hostinger, UAB |
| Kevinstudioinc.com | NameCheap, Inc. |
| Kevinstudiolives.com | NameCheap, Inc. |

E.   ORDERED that within three (3) days of receipt of this Order, the following Internet store or online marketplace platforms shall remove or disable all website links identified in Exhibits A and B to Zhong Decl. that appear on their platform for the following Defendants' online marketplaces, or remove or disable the storefront:

| Defendants' Online Marketplace | Internet Store/Online Marketplace Platform |
|---|---|
| cnsigma.en.alibaba.com<br>sigmafurniture.en.alibaba.com<br>sigmaliving.en.alibaba.com | Alibaba.com Singapore E-Commerce Private Limited |
| momolight.en.alibaba.com | Alibaba.com Singapore E-Commerce Private Limited |

F.   ORDERED that, upon two (2) business days' written notice to the Court and Plaintiffs' counsel, any Defendant may, upon proper showing, appear and move for the dissolution or modification of the provisions of this Order concerning the disabling of Defendants' domain names and online marketplaces; and it is further

G.   ORDERED that, where a third party is herein ordered to take any action, the third party may, upon giving notice to Plaintiffs' counsel, seek relief from the Order applicable to said third party in whole or in part by filing an appropriate motion with this Court (and, upon application, any such motion may be heard on shortened time if so ordered); and it is finally

H.   ORDERED that Plaintiffs shall serve this Order on each Defendant via email in accordance with ECF No. 23 (TRO), and that upon such notice shall immediately file a proof of service certifying service and describing the means

of service. Defendants are thereby given notice they shall be deemed to have actual notice of the issuance and terms of this Order and any act by them or any one of them in violation of any of the terms thereof may be considered and prosecuted as contempt of this Court.

I. This Court shall retain jurisdiction for the purpose of making any further orders necessary or proper for the construction or modification of this Judgment and Permanent Injunction, the enforcement thereof, and/or punishment for any violations thereof.

J. The bond previously posted by RH for securing the TRO and preliminary injunction is released.

**IT IS SO ORDERED:**

_____
UNITED STATES DISTRICT COURT JUDGE

DATED: _____