1

2

3

4                                    UNITED STATES DISTRICT COURT

5                                  NORTHERN DISTRICT OF CALIFORNIA

6

7    RESTORATION HARDWARE, INC., et          Case No.  23-cv-00948-HSG   (KAW)
     al.,
8
                     Plaintiffs,             **REPORT AND RECOMMENDATION**
9                                            **TO GRANT IN PART AND DENY IN**
             v.                              **PART MOTION FOR DEFAULT**
10                                           **JUDGMENT**
     ALIMIA LIGHT, et al.,
11                                           Re: Dkt. No. 44
                     Defendants.
12

13          On March 3, 2023, Plaintiffs Restoration Hardware, Inc. and RH US, LLC (collectively,

14   "RH") filed the instant lawsuit against Defendants (1) Alimia Light ("Alimia Light"); (2)

15   Zhongshan Zhuosai Lighting, Co., Ltd., dba Yami Lighting and Pop Lamps ("Zhuosai Lighting");

16   (3) Shanghai ZeroTai Industrial Co., dba Grand Lamps ("Grand Lamps"); (4) Zhonshan Yuyi Co.

17   dba Wing Lighting ("Wing Lighting"); (5) Zhongshan Laiting Lighting Co., dba Oasis Lamps

18   ("Oasis Lamps"); (6) Zhongshan Momo Lighting Co., dba Momo ("Momo Chandelier"); (7) Fanci

19   Light; (8) Cure Lighting, LLC ("Cure Lighting"); (9) Clouds Lights; (10) Kushigo Limited, dba

20   Eric Light and Emma Lighting ("Kushigo Limited"); (11) Lighting Forever; (12) Zhongshan

21   Reborn Lighting Co., Ltd. ("Reborn"); (13) Showsun Lighting and Sunny Wang, dba Showsun

22   Lighting; (14) Jinhua Sigma Industrial & Trading Co., Ltd. ("Sigma Living"); (15) Ineffable

23   Lighting; (16) Nimo LLC ("Zenduce"); (17) Oclolli Limited, dba Mooni Lighting ("Oclolli"); and

24   (18) Kevin Studio.[1]  (Compl., Dkt. No. 1.)  RH alleges Defendants have violated RH's intellectual

25   property rights by using RH's copyrighted photographs of its lighting products and brand names to

26

27   _____
     [1] The case was also brought against other Defendant-Entities who have since entered into a
28   stipulated consent judgment and permanent injunction with RH.  (*See* Dkt. No. 40.)  The Court
     does not address these entities in this order, and any reference to Defendants in this order does not
     include these entities.

sell knockoffs of RH's lighting products on websites targeting consumers in the United States. (Compl. ¶ 2.)

On July 11, 2024, the Court held a hearing, but Defendants did not appear.  (Dkt. No. 57.) Having reviewed the moving papers and relevant legal authorities, the Court RECOMMENDS that RH's motion for default judgment be GRANTED IN PART AND DENIED IN PART.

## I.    BACKGROUND

### A.    Factual Background

RH, a Delaware corporation whose principal place of business is located in California, is a luxury retailer in the home furnishings marketplace.  (Compl. ¶¶ 1, 4-5.)  RH offers a wide variety of home furnishings, including furniture and lighting products, through its retail stores, catalogs, and website.  (Compl. ¶ 57.)

RH spends substantial time, money, and effort staging and photographing its products. (Compl. ¶ 58.)  RH uses thousands of photographs featuring its products in RH's catalogs and website.  (Compl. ¶ 58.)  RH also owns copyrights in the product photographs.  (Compl. ¶ 59.) RH currently owns more than 90 U.S. copyright registrations, including registrations for catalogs and websites, which collectively cover all of the photographs at issue in this case (collectively, "Copyrighted Works").  (Compl. ¶ 59.)  Based on these registrations, RH owns the exclusive right to copy, distribute, and publicly display the Copyrighted Works.  (Compl. ¶ 59.)

RH also owns common law rights in the product names it uses for the lighting products at issue in this case: AQUITAINE, ARCACHON, BOULE DE CRISTAL, CAMINO, CANNELE, CASCADA, ECLATANT, FULCRUM, HARLOW, MACHINIST, MARIGNAN, PAUILLAC, PEARL, RAIN, RAVELLE, RHYS, SAN MARCO, SAVILE, SPIRIDON, UTILITAIRE, and WRIGHT.  (Compl. ¶ 60.)  Additionally, RH owns common law and federal trademark registrations for its RESTORATION HARDWARE Mark (collectively, with the product names, "RH Marks").  (Compl. ¶ 60.)

Defendants are foreign companies operating online stores that are using RH's Copyrighted Works and RH Marks to sell knockoffs of RH products to the U.S. market.  (Compl. ¶ 2.)  On March 3, 2023, RH filed the instant lawsuit asserting claims for: (1) copyright infringement of the

Copyrighted Works under the Copyright Act of 1976, 15 U.S.C. § 501; (2) unfair competition with respect to the RH Marks under the Lanham Act, 15 U.S.C. § 1125(a), and (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. (Compl. ¶ 3.) In its complaint, RH identified the following instances of copyright infringement by Defendants:

### i.    Alimia Light

Defendant Alimia Light is a Chinese company which owns and operates the website, alimialight.com. (Compl. ¶ 6.) Defendant Alimia Light used the following on its website: (1) RH's photograph of its Arcachon Led Round Chandelier, infringing on Registration No. VA 2-298-977; (2) RH's photograph of its Lambeth Knurled Grand Sconce, infringing on Registration No. VA 2-195-419; and (3) RH's photograph of its Fulcrum Sconce, infringing on Registration No. 2-298-977. (Compl., Exh. C at 5-6.) Defendant Alimia Light used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used California-based service providers such as payment providers and processors to support its infringing conduct. (Compl. ¶ 32.)

### ii.    Zhuosai Lighting

Defendant Zhuosai Lighting is a Chinese company which owns and operates the websites, winglights.com, yami-lighting.com, and poplamps.com. (Compl. ¶¶ 7, 33.) Since the filing of the complaint, Defendant Zhuosai Lighting used the following on its website: (1) RH's photograph of its Rain Rectangular Chandelier, infringing on Registration No. VA 2-315-654; (2) RH's photograph of its Emile Round Chandelier, infringing on Registration No. VA 2-195-419; (3) RH's photograph of its Boule de Cristal Clear Glass Round Chandelier, infringing on Registration No. VA 2-315-654; (4) RH's photograph of its Pauillac Round Chandelier, infringing on Registration No. VA 2-315-654; (5) RH's photograph of its Éclatant Grand Pendant, infringing on Registration No. VA 2-315-654; and (6) RH's photograph of its Ravelle Sconce, infringing on Registration No. VA 2-195-419. (Compl., Exh. C at 17-19, 57-58.) Defendant Zhuosai Lighting used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and

United States District Court
Northern District of California

used California-based service providers such as payment providers and processors to support its infringing conduct.  (Compl. ¶ 33.)

### iii.    Grand Lamps

Defendant Grand Lamps is a Chinese company which owns and operates the website grandlamps.com.  (Compl. ¶¶ 8, 34.)  Defendant Grand Lamps used the following on its website: (1) RH's photograph of its Crystal Halo Clear Round Led Chandelier, infringing on Registration No. VA 2-315-654; (2) RH's photograph of its Savile Rectangular Linear Sconce, infringing on Registration No. VA 2-315-654; and (3) RH's photograph of its Ravelle Sconce, infringing on Registration No. VA 2-195-419.  (Compl., Exh. C at 27-29.)  Defendant Grand Lamps used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used California-based service providers such as payment providers and processors to support its infringing conduct.  (Compl. ¶ 34.)

### iv.    Wing Lighting

Defendant Wing Lighting is a Chinese company that owns and operates the website winglightings.com.  (Compl. ¶¶ 9, 35.)  Defendant Wing Lighting used the following on its website: (1) RH's photograph of its Arcachon Led Round Chandelier, infringing on Registration No. VA 2-298-977; (2) RH's photograph of its Pearl Sconce, infringing on Registration No. VA 2-298-977; and (3) RH's photograph of its Éclatant Grand Pendant, infringing on Registration No. VA 2-298-977.  (Compl., Exh. C at 36-37.)  Defendant Wing Lighting used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used California-based service providers such as payment providers and processors to support its infringing conduct.  (Compl. ¶ 35.)

### v.    Oasis Lamps

Defendant Oasis Lamps is a Chinese company that owns and operates the website oasislamps.com.  (Compl. ¶¶ 10, 36.)  Defendant Oasis Lamps used the following on its website: (1) RH's photograph of its Pearl Double Sconce, infringing on Registration No. VA 2-315-654;

4

(2) RH's photograph of its Lambeth Hexagonal Sconce, infringing on Registration No. VA 2-195-419; and (3) RH's photograph of its Fulcrum Pendant, infringing on Registration No. VA 2-315-654. (Compl., Exh. C at 45-46.) Defendant Oasis Lamps used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used California-based service providers such as payment providers and processors to support its infringing conduct. (Compl. ¶ 36.)

### vi.    Momo Chandelier

Defendant Momo Chandelier is a Chinese company that owns and operates the website momochandelier.com, and operates the Alibaba storefront at momolight.en.alibaba.com. (Compl. ¶¶ 11, 37.) Defendant Momo Chandelier used the following on its website: (1) RH's photograph of its Arcachon Led Round Chandelier, in violation of Registration No. VA 2-315-654; (2) RH's photograph of its Boule De Cristal Clear Glass Linear Chandelier, in violation of Registration No. VA 2-315-654; and (3) RH's photograph of its Crystal Halo Clear Round Led Chandelier, infringing on Registration No. VA 2-315-654. (Compl., Exh. C at 63-64.) Defendant Oasis Lamps used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used California-based service providers such as payment providers and processors to support its infringing conduct. (Compl. ¶ 37.)

### vii.    Fanci Light

Defendant Fanci Light is allegedly a Chinese company that owns and operates the website fancilight.com. (Compl. ¶¶ 12, 38.) Defendant Fanci Light used the following on its website: (1) RH's photograph of its Rain Rectangular Chandelier, infringing on Registration No. VA 2-298-977; (2) RH's photograph of its Pearl Sconce, infringing on Registration No. VA 2-298-977; and (3) RH's photograph of its Boule De Cristal Clear Glass Linear Chandelier, infringing on Registration No. VA 2-298-977. (Compl., Exh. C at 211-12.) Defendant Fanci Light used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used

California-based service providers such as payment providers and processors to support its infringing conduct.  (Compl. ¶ 38.)

### viii.   Cure Lighting

Defendant Cure Lighting is allegedly a Chinese company that owns and operates the website curelighting.com.  (Compl. ¶¶ 13, 39.)  Defendant Cure Lighting used the following on its website: (1) RH's photograph of its Arcachon Led Round Two-Tier Chandelier, infringing on Registration No. VA 2-298-977; (2) RH's photograph of its Fulcrum Sconce, infringing on Registration No. VA 2-298-977; and (3) RH's photograph of its Arpège Cylinder Pendant, infringing on Registration No. VA 2-298-977.  (Compl., Exh. C at 222-23.)  Defendant Cure Lighting used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used California-based service providers such as payment providers and processors to support its infringing conduct.  (Compl. ¶ 39.)

### ix.   Clouds Lights

Defendant Clouds Lights is allegedly a Chinese company that owns and operates the website cloudslights.com.  (Compl. ¶¶ 14, 40.)  Defendant Clouds Lights used the following on its website: (1) RH's photograph of its Pearl Sconce, infringing on Registration No. VA 2-298-977; (2) RH's photograph of its Marbuzet Linear Sconce, infringing on Registration No. VA 2-298-977; and (3) RH's photograph of its Éclatant Grand Pendant, infringing on Registration No. VA 2-298-977.  (Compl., Exh. C at 231-33.)  Defendant Clouds Lights used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used California-based service providers such as payment providers and processors to support its infringing conduct. (Compl. ¶ 40.)

### x.   Kushigo Limited

Defendant Kushigo Limited is allegedly a Chinese company that owns and operates the websites ericlightus.com and emmalighting.com.  (Compl. ¶¶ 15, 41.)  Defendant Kushigo Limited used the following on its website: (1) RH's photograph of its Éclatant Grand Pendant,

United States District Court
Northern District of California

infringing on Registration No. VA 2-315-654; (2) RH's photograph of its Arcachon Led Round Chandelier, infringing on  Registration No. VA 2-315-654; (3) RH's photograph of its Pearl Triple Sconce, infringing on Registration No. VA 2-315-654; (4) RH's photograph of its Harlow Crystal Sconce, infringing on Registration No. VA 2-195-419; (5) RH's photograph of its Emile Round Chandelier, infringing on Registration No. VA 2-195-419; and (6) RH's photograph of its Éclatant Grand Pendant, infringing on Registration No. VA 2-298-977.  (Compl., Exh. C at 247-49, 263-64.)  Defendant Kushigo Limited used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used California-based service providers such as payment providers and processors to support its infringing conduct.  (Compl. ¶ 41.)

### xi.    Lighting Forever

Defendant Lighting Forever is allegedly a Chinese company that owns and operates the website lighting-forever.com.  (Compl. ¶¶ 16, 42.)  Defendant Lighting Forever used the following on its website: (1) RH's photograph of its Lambeth Knurled Grand Sconce, infringing on Registration No. VA 2-195-419; (2) RH's photograph of its Crystal Halo Clear Round Led Chandelier, infringing on Registration No. VA 2-298-977; and (3) RH's photograph of its Arcachon Led Round Chandelier, infringing on Registration No. VA 2-298-977.  (Compl., Exh. C at 257-58.)  Defendant Lighting Forever used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used California-based service providers such as payment providers and processors to support its infringing conduct.  (Compl. ¶ 42.)

### xii.    Reborn

Defendant Reborn is a Chinese company that owns and operates the website rebornlighting.com.  (Compl. ¶¶ 18, 44.)  Defendant Reborn used the following on its website: (1) RH's photograph of its Boule De Cristal Clear Glass Round Chandelier, infringing on Registration No. VA 2-298-977; (2) RH's photograph of its Emile Round Chandelier, infringing on Registration No. VA 2-195-419; and (3) RH's photograph of its Crystal Halo Clear Round Led Chandelier, infringing on Registration No. VA 2-315-654.  (Compl., Exh. C at 284-85.)

United States District Court
Northern District of California

Defendant Reborn used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used California-based service providers such as payment providers and processors to support its infringing conduct. (Compl. ¶ 44.)

### xiii.    Showsun Lighting and Sunny Wang

Defendant Showsun Lighting is a Chinese company that owns and operates the website showsunlights.com, while Defendant Sunny Wang is the contact for Showsun Lighting. (Compl. ¶¶ 19, 20.) Defendant Showsun Lighting used the following on its website: (1) RH's photograph of its Crystal Halo Clear Round Led Chandelier, infringing on Registration No. VA 2-315-654; (2) RH's photograph of its Arcachon Led Round Two-Tier Chandelier, infringing on Registration No. VA 2-315-654; and (3) RH's photograph of its Emile Round Chandelier, infringing on Registration No. VA 2-195-419. (Compl., Exh. C at 294-95.) Defendant Showsun Lighting used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used California-based service providers such as payment providers and processors to support its infringing conduct. (Compl. ¶ 45.)

### xiv.    Sigma Living

Defendant Sigma Living is a Chinese company that owns and operates the website jhsigmafurniture.com, as well as operates the Alibaba storefront at cnsigma.en.alibaba.com. (Compl. ¶ 21.) Defendant Sigma Living used the following on its website: (1) RH's photograph of its Rain Rectangular Chandelier, infringing on Registration No. VA 2-298-977; and (2) RH's photograph of its Rain Round Chandelier, infringing on Registration No. VA 2-298-977. (Compl., Exh. C at 310-11.) Defendant Sigma Living used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used California-based service providers such as payment providers and processors to support its infringing conduct. (Compl. ¶ 46.)

### xv.    Ineffable Lighting

Defendant Ineffable Lighting is allegedly a Chinese company that owns and operates the

website ineffablelighting.com.  (Compl. ¶¶ 23, 48.)  Defendant Ineffable Lighting used the following on its website: (1) RH's photograph of its Boule De Cristal Clear Glass Round Chandelier, infringing on Registration No. VA 2-298-977; (2) RH's photograph of its Pearl Double Sconce, infringing on Registration No. VA 2-298-977; and (3) RH's photograph of its Arcachon Led Round Two-Tier Chandelier, infringing Registration No. VA 2-298-977.  (Compl., Exh. C at 563-64.)  Defendant Ineffable Lighting used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used California-based service providers such as payment providers and processors to support its infringing conduct.  (Compl. ¶ 48.)

### xvi.    Zenduce

Zenduce is allegedly a Chinese company that owns and operates zenduce.com.  (Compl. ¶¶ 25, 50.)  Defendant Zenduce used the following on its website: (1) RH's photograph of its Rain Sconce, infringing on Registration No. VA 2-298-977; and (2) RH's photograph of its Fulcrum Sconce, infringing on Registration No. VA 2-298-977.  (Compl., Exh. C at 576-77.)  Defendant Zenduce used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used California-based service providers such as payment providers and processors to support its infringing conduct.  (Compl. ¶ 50.)

### xvii.    Oclolli

Defendant Oclolli is allegedly a Chinese company that owns and operates moonilighting.com.  (Compl. ¶¶ 27, 52.)  Defendant Oclolli used the following on its website: (1) RH's photograph of its Pearl Sconce, infringing on Registration No. VA 2-298-977; (2) RH's photograph of its Pauillac Round Chandelier, infringing on Registration No. VA 2-298-977; and (3) RH's photograph of its Arcachon Led Round Two-Tier Chandelier, infringing on Registration No. VA 2-298-977.  (Compl., Exh. C at 581-82.)  Defendant Oclolli used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff RH products to consumers in California, shipped infringing products to consumers in California, and used California-based service providers such as payment providers and processors to support its

9

1    infringing conduct.  (Compl. ¶ 52.)

2        **xviii.    Kevin Studio**

3        Finally, Defendant Kevin Studio is a Chinese company that owns and operates the website

4    kevinstudioinc.com.  (Compl. ¶¶ 28, 53.)  Defendant Kevin Studios used the following on its

5    website: (1) RH's photograph of its Pearl Sconce, infringing on Registration No. VA 2-298-977;

6    (2) RH's photograph of its Boule De Cristal Clear Glass Round Chandelier, infringing on

7    Registration No. VA 2-298-977; and (3) RH's photograph of its Rain Round Chandelier,

8    infringing on Registration No. VA 2-298-977.  (Compl., Exh. C at 588-89.)  Defendant Kevin

9    Studio used the specified copyrighted photographs and RH's Marks to advertise and sell knockoff

10   RH products to consumers in California, shipped infringing products to consumers in California,

11   and used California-based service providers such as payment providers and processors to support

12   its infringing conduct.  (Compl. ¶ 53.)

13       **B.    Procedural Background**

14       On March 3, 2023, RH filed the instant complaint and a motion for a temporary restraining

15   order ("TRO").  On March 6, 2023, the presiding judge issued an order requiring that RH serve

16   the complaint and motion for a TRO on Defendants by e-mail.  (Dkt. No. 9.)  After RH failed to

17   do so by the deadline set, the presiding judge denied the motion for a TRO.  (Dkt. No. 11.)

18       On May 5, 2023, RH filed a renewed motion for a TRO, as well as a certificate of service

19   stating that Defendants had been served by e-mail.  (Dkt. Nos. 16, 16-2.)  On May 8, 2023, the

20   presiding judge acknowledged the service by e-mail, and set a deadline for Defendants' response.

21   (Dkt. No. 17.)  On May 24, 2023, the presiding judge granted the renewed motion for a TRO,

22   which: (1) enjoined Defendants from using RH's Copyrighted Works and RH's Marks, (2) froze

23   certain PayPal accounts, and (3) authorized RH to serve the summons, complaint, and all other

24   pleadings or documents filed in the case on Defendants by e-mail.  (TRO Order, Dkt. No. 23 at 6-

25   8.)  The presiding judge further ordered a bond of $10,000, and set a preliminary injunction

26   hearing for July 7, 2023.  (*Id.* at 5, 8.)

27       Defendants did not appear at the July 7, 2023 hearing.  (Dkt. No. 32.)  The presiding judge

28   thus issued a preliminary injunction, again enjoining Defendants from using RH's Copyrighted

United States District Court
Northern District of California

10

Works and RH's Marks.  (Prelim. Inj. Order at 7, Dkt. No. 34.)  The presiding judge further ordered that Defendants' domain names be temporarily disabled.  (*Id.* at 7-8.)

On August 24, 2023, RH filed a motion for entry of default as to Defendants, based on service by e-mail of the complaint on May 25, 2023 and the summons on May 30, 2023.  (Dkt. No. 41; *see* Dkt. Nos. 26, 28.)  On August 29, 2023, the Clerk of the Court entered default as to Defendants.  (Dkt. No. 42.)

On January 2, 2024, RH filed the instant motion for default judgment.  (Mot. for Default J., Dkt. No. 44.)  RH originally sought statutory damages of $330,000 per Defendant, as well as the disabling of websites not listed in the complaint.  (*Id.* at 13, 14.)  After the motion for default judgment was referred to the undersigned for a report and recommendation, the Court issued an order requiring supplemental briefing based on RH's failure to address how each Defendant allegedly infringed on all 11 copyrighted works.  (Dkt. No. 50.)  On April 19, 2024, RH responded by reducing its damages request to the specific examples of infringement listed in the complaint. (Supp. Br., Dkt. No. 51.)  On June 28, 2024, the Court issued a second order requiring supplemental briefing as to: (1) how individual Defendant Sunny Wang was liable for the alleged infringement, and (2) a demonstration that the websites not listed in the complaint were related to Defendants.  (Dkt. No. 55.)  On July 5, 2024, RH responded by agreeing to dismiss the claims against Defendant Wang without prejudice, and by providing side-by-side comparison of the newly created websites at issue.  (Second Supp. Br., Dkt. No. 56.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default.  *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001).  Whether to enter a judgment lies within the court's discretion.  *Id.* at 999 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  If the court finds these elements satisfied, it turns to the following factors ("the Eitel factors") to

United States District Court
Northern District of California

1   determine whether it should grant a default judgment:

2       (1) the possibility of prejudice to the plaintiff, (2) the merits of
3       plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
        the sum of money at stake in the action[,] (5) the possibility of a
4       dispute concerning material facts[,] (6) whether the default was due
        to excusable neglect, and (7) the strong policy underlying the
5       Federal Rules of Civil Procedure favoring decision on the merits.

6   *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). Upon entry of default,

7   all factual allegations within the complaint are accepted as true, except those allegations relating to

8   the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

9   Where a default judgment is granted, the scope of relief "must not differ in kind from, or exceed in

10  amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

11                          **III.    DISCUSSION**

12      **A.    Jurisdiction and Service of Process**

13       In considering whether to enter default judgment, a district court must first determine

14  whether it has jurisdiction over the subject matter and the parties to the case.  *In re Tuli*, 172 F.3d

15  707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to

16  plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over

17  both the subject matter and the parties.").

18          **i.    Subject Matter Jurisdiction**

19       This is a civil action that arises under the Copyright Act, 17 U.S.C. § 101 *et seq.* and the

20  Lanham Act, 15 U.S.C. § 1051 *et seq.*  Thus, the Court has subject matter jurisdiction.

21          **ii.    Personal Jurisdiction and Venue**

22       This Court has personal jurisdiction over Defendants purposely directed their actions to

23  California, including this District.  "Willful infringement of protected intellectual property is

24  ordinarily sufficient to subject a defendant to the jurisdiction of the plaintiff's home state

25  consistent with the Constitution's guarantee of due process, so long as the infringing activity

26  targets a broad audience, is engaged in for profit, and places the infringing defendant in

27  competition with the plaintiff."  *Mode Media Corp. v. Doe*, No. 16-cv-00244-RS, 2016 U.S. Dist.

28  LEXIS 188934, at *3 (N.D. Cal. Sep. 12, 2016).  Here, Defendants are infringing on the

United States District Court
Northern District of California

intellectual property of RH, whose principal place of business is in this district.  (Compl. ¶¶ 4, 5.)

Defendants' infringing activity consists of using RH's intellectual property to advertise and sell

knockoffs of RH products to a broad range of consumers, including those in California.  (Compl.

¶¶ 32-42, 44-46, 48, 50, 52-53.)  Defendants also use California-based service, providers,

including payment providers and processors, to support their infringing conduct.  (*Id.*)

Accordingly, personal jurisdiction and venue are proper in this district.

### iii.    Service of Process

RH was given leave to serve Defendants by e-mail, and served the complaint and summons

upon them accordingly.  (TRO Order at 5; Dkt. Nos. 26, 27.)  After RH moved for entry of

default, default was entered on August 29, 2023.  (Dkt. Nos. 41, 42.)

### B.    Application of *Eitel* Factors to the Case at Bar

### i.    First Factor: Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if a default

judgment is not entered.  *See PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177

(C.D. Cal. 2002).  Taking all of the factual allegations in the complaint as true, the first *Eitel* factor

weighs in favor of granting default judgment on RH's claims because otherwise RH would be left

without a remedy or means to prevent Defendants' infringement.  Accordingly, the first *Eitel*

factor weighs in favor of granting default judgment.

### ii.    Second and Third Factors: Merits of Plaintiff's Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors address the merits and sufficiency of RH's claims pled

in the complaint.  "These two factors are often analyzed together."  *Li v. A Perfect Day Franchise,*

*Inc.*, Case No. 10-cv-1189-LHK, 2012 WL 2236752, at *6 (N.D. Cal. June 15, 2012).  In

considering the second and third factors, the Court takes all factual allegations in RH's complaint

as true, except for those relating to damages.  *Televideo Sys.*, 826 F.2d at 917-18.

### a.    Sunny Wang

Per RH's second supplemental brief, RH consents to dismissing its claims against

Defendant Wang without prejudice.  (Second Supp. Br. at 1.)  Accordingly, the Court recommends

13

1    that default judgment against Defendant Wang be DENIED, and that the claims against Defendant

2    Wang be dismissed without prejudice.

3                    b.    Copyright Infringement

4    RH's first claim is for copyright infringement.  "Plaintiffs must satisfy two requirements to

5    present a prima facie case of direct infringement: (1) they must show ownership of the allegedly

6    infringed material and (2) they must demonstrate that the alleged infringers violate at least one

7    exclusive right granted to copyright holders under 17 U.S.C. § 106."  *A&M Records v. Napster*,

8    239 F.3d 1004, 1013 (9th Cir. 2001).

9    RH satisfies both requirements.  First, the Copyright Office has issued certificates of

10   registration to RH that encompass the infringed works at issue.  (*See* Compl., Exh. A.)  Second,

11   Defendants have reproduced and distributed RH's Copyrighted Works on their websites in order

12   to sell knock-of products.  (Compl. ¶¶ 32-42, 44-46, 48, 50, 52-53, 61-104 Exh. C.)

13                   c.    Trademark Infringement

14   RH's second claim is for trademark infringement.  To prevail on a claim for trademark

15   infringement under the Lanham Act, RH "must demonstrate that it owns a valid mark, and thus a

16   protectable interest, and it must show that [Defendants'] use of the mark is likely to cause

17   confusion, or to cause mistake, or to deceive."  *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196

18   (9th Cir. 2009) (internal quotation omitted).

19   Here, RH owns common law rights in the product names it uses for the lighting products at

20   issue in this case.  (Compl. ¶ 60, Exh. B.)  RH pleads in its complaint that Defendants are using

21   these product names or confusingly similar variations to sell knockoffs of RH products.  (Compl.

22   ¶¶ 62, 64, 66, 68, 70, 72, 74, 76, 78, 80, 82, 86, 88, 90, 94, 98, 102, 104.)  Defendants' use of these

23   product names is likely to cause confusion, particularly when combined with the use of RH's

24   Copyrighted Works to advertise and sell the knockoff products.

25                   d.    UCL

26   RH's final claim is for unfair competition under the UCL.  The Ninth Circuit "has

27   consistently held that state common law claims of unfair competition and actions pursuant to [the

28   UCL] are substantially congruent to claims made under the Lanham Act.  *Cleary v. News Corp.*,

United States District Court
Northern District of California

14

1    30 F.3d 1255, 1262-63 (9th Cir. 1994) (internal quotation omitted).  Thus, because RH has

2    demonstrated a Lanham Act claim, it has sufficiently stated a UCL claim.

3          Accordingly, with the exception of Defendant Wang, the Court finds that the second and

4    third *Eitel* factors weigh in favor of granting RH's motion for default judgment.

5                      **iii.    Fourth Factor: Sum of Money at Stake**

6          The fourth *Eitel* factor addresses the amount of money at stake in relation to the

7    seriousness of Defendants' conduct.  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176.  Default judgment is

8    disfavored when the amount at stake is substantial or unreasonable in light of the allegations in the

9    complaint.  *See Eitel*, 782 F.2d at 1472 (affirming denial of default judgment where the plaintiff

10   sought $3 million in damages and the parties disputed material facts in the pleadings).

11         Following supplemental briefing, RH now seeks the statutory maximum of $30,000 from

12   each Defendant. With the exception of Defendant Wang (as discussed above), the Court finds that

13   RH is entitled to recover these amounts.  Thus, this factor weighs in favor of default judgment.

14                     **iv.    Fifth Factor: Possibility of Dispute Concerning Material Facts**

15         The fifth *Eitel* factor examines the likelihood of dispute concerning material facts in the

16   case.  *Eitel*, 782 F.2d at 1471-72.  Upon entry of default, the defendant is "deemed to have

17   admitted all well-pleaded factual allegations" in the complaint.  *DirectTV, Inc. v. Hoa Huynh*, 503

18   F.3d 847, 851 (9th Cir. 2007) (citing to Fed. R. Civ. P. 55(a)).

19         Given the factual allegations in the complaint, as well as the side-by-side comparisons of

20   the alleged infringing activity, there does not appear to be a possibility of dispute concerning

21   material facts.  Accordingly, this factor weighs in favor of default judgment.

22                     **v.    Sixth Factor: Whether Default was a Result of Excusable Neglect**

23         The sixth *Eitel* factor contemplates the possibility that Defendant's default was the result

24   of excusable neglect. Under this analysis, the Court considers whether the defendant was put on

25   adequate notice to apprise it of the pendency of the action brought against it.  *Phillip Morris USA,*

26   *Inc. v. Castworld Prod., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003).  In addition, the Court also

27   considers whether the circumstances surrounding Defendant's failure to answer the complaint are

28   sufficient to excuse or justify its default.  *Shanghai Automation Instrument Co. v. Kuei*, 194 F.

1    Supp. 2d 995, 1005 (N.D. Cal. 2001) (default cannot be attributed to excusable neglect where

2    defendants were properly served with the complaint, the notice of entry of default, and the papers

3    in support thereof.).

4          Here, Defendants were served with the complaint and summons via the e-mail address they

5    used to conduct business, as authorized by the presiding judge.  In permitting service by e-mail,

6    the presiding judge specifically found that such service was "reasonably calculated to give

7    [Defendants] notice."  (TRO Order at 5.)  There is nothing to suggest service was not successful

8    and that Defendants were unaware of this action.  This factor weighs in favor of default judgment.

9          **vi.    Seventh Factor: Policy Favoring a Decision on the Merits**

10         In *Eitel*, the Ninth Circuit stated that "[c]ases should be decided on the merits whenever

11   reasonably possible."  *Eitel*, 782 F.2d at 1472.  The courts have recognized, however, that "this

12   preference, standing alone, is not dispositive."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (internal

13   quotation omitted).  The existence of Federal Rule of Civil Procedure 55(b) indicates that the

14   "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an

15   action."  *Id.*  Defendant has not participated in the proceedings and so a decision on the merits

16   would not otherwise be possible.  In this situation, Rule 55(b) permits the court to grant default

17   judgment.

18         After an examination of the *Eitel* factors in the aggregate, the Court finds that *Eitel* factors

19   one through six outweigh the preference for a decision on the merits.  The undersigned, therefore,

20   recommends the entry of default judgment for all Defendants except Defendant Wang.

21         **IV.    DAMAGES**

22         After entry of default, well-pleaded factual allegations in the complaint are taken as true,

23   except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir.

24   2002).  To recover damages after securing a default judgment, a plaintiff must prove the relief it

25   seeks through testimony or written affidavit.  *Bd. of Trs. of the Boilermaker Vacation Trust v.*

26   *Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see PepsiCo, Inc.*, 238 F. Supp. 2d at

27   1175.

28

United States District Court
Northern District of California

**A.    Injunctive Relief**

RH seeks a permanent injunction to: (1) prohibit Defendants from using RH's Copyrighted Works and RH Marks, or any marks confusingly similar thereto; and (2) disable the websites used to infringe on RH's intellectual property rights.  (Mot. for Default J. at 11-12.)  A party seeking a permanent injunction must establish: (1) actual success on the merits; (2) a likelihood of irreparable injury to the moving party if injunctive relief is not granted; (3) a balance of hardships favoring the moving party; and (4) advancement of the public interest.  *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987).

First, as discussed above, RH has demonstrated actual success on the merits.

Second, as previously explained by the presiding judge, RH is likely to suffer irreparable harm without injunctive relief.  (TRO Order at 3-4; Prelim. Inj. Order at 3.)  Specifically, RH has alleged that it has "poured substantial resources into developing their brands and products since 1980.  Given the risk that consumers will believe they are purchasing authentic RH lighting products, [RH's] loss of control over business reputation and potential damage to goodwill constitutes an irreparable injury."  (*Id.*)  Likewise, with respect to the disabling of websites, the presiding judge has already ordered Defendants to cease using the RH Copyrighted Works and RH Marks, but many Defendants have continued to do so by simply creating new websites after their original websites were shut down.  (Prelim. Inj. Order at 7; Second Supp. Br. at 3-12.) Specifically, Defendants Yami Lighting, Wing Lighting, Kushigo Limited , Alimia Light, Oasis Lamps, Fanci Light, Ineffable Lighting, Kevin Studio, and Clouds Lights have new websites with almost identical links (*e.g.*, winglightings.com vs. wing-lighting.com, alimialight.com vs. alimialighting.com); screenshot comparisons of the websites show identical logos and very similar layouts.  (Second Supp. Br. at 3-11.)  Defendant Sigma Living, in turn, operates new storefronts on Alibaba under the same name, using the same company contact named "Sophie King," and the sane incorporation date.  (Second Supp. Br. at 11-12.)  This further demonstrates a likelihood of irreparable injury because Defendants will only continue to create new websites in order to infringe on RH's intellectual property rights.

1    Third, the balance of hardships favors RH.  Again, as the presiding judge explained, RH

2    risks damage to their reputation and goodwill.  (TRO Order at 4; Prelim. Inj. Order at 4.)  In

3    contrast, "[w]here the only hardship that the defendant will suffer is lost profits from an activity

4    which has been shown likely to be infringing, such an argument in defense merits little equitable

5    consideration.  Any hardship on Defendants from the imposition of a[n] injunction would be the

6    result of their own infringement."  (*Id.* (internal quotation omitted).)

7        Finally, it is in the public interest to issue a preliminary injunction.  "Public policy strongly

8    supports stopping infringement to protect consumers where there is a likelihood of confusion."

9    (TRO Order at 4; Prelim. Inj. Order at 4.)  Further, "[i]t is virtually axiomatic that the public

10   interest can only be served by upholding copyright protections, and correspondingly, preventing

11   the misappropriation of the skills, creative energies, and resources which are invested in the

12   protected work."  *CNC Software, Ltd. Liab. Co. v. Glob. Eng'g Ltd. Liab. Co.*, No. 22-cv-02488-

13   EMC, 2023 U.S. Dist. LEXIS 83880, at *20-21 (N.D. Cal. May 12, 2023) (internal quotation

14   omitted).

15       Accordingly, the undersigned finds that injunctive relief is warranted, and recommends

16   that a permanent injunction be entered.

17       **B.    Statutory Damages**

18       RH seeks an award of statutory damages under the Copyright Act.  (Mot. for Default J. at

19   8.)  17 U.S.C. § 504(a) provides: "Except as otherwise provided by this title, an infringer of

20   copyright is liable for either—(1) the copyright owner's actual damages and any additional profits

21   of the infringer, as provided by subsection (b); or (2) statutory damages[.]"  Under copyright law,

22   a Plaintiff may elect to recover an award of statutory damages at any time before final judgment is

23   rendered. 17 U.S.C. § 504(c)(1).  A court, in its discretion, can award not less than $750 but not

24   more than $30,000 per copyright infringed.  Enhanced damages of up to $150,000 per copyright

25   infringed may be granted on a finding of willful infringement. 17 U.S.C. § 504(c)(2).

26       Statutory damages are intended to serve as a deterrent rather than a windfall, and the court

27   has wide discretion to determine the amount of statutory damages between the statutory maxima

28   and minima. *Harris v. Emus Recs. Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).  In the instant case,

United States District Court
Northern District of California

1   following supplemental briefing, RH seeks the statutory maximum of $30,000 per copyright

2   infringed as identified in the complaint.  (Supp. Br. at 1.)  While RH does not seek enhanced

3   damages based on willful infringement, the infringement likely appears to be willful given that the

4   Copyrighted Works and RH Marks are being used together to sell knockoffs of RH's lighting

5   products.  Moreover, many Defendants have created new websites that continue to infringe on

6   RH's Copyrighted Works in order to sell knockoffs.  (*See* 1/2/24 Zhong Decl., Exh. A; Second

7   Supp. Br. at 2-12.)  Under such circumstances, the statutory maximum of $30,000 per copyright

8   infringed is appropriate.

9          Accordingly, the Court recommends the following statutory damages:

10  (1)   Alimia Light: $60,000, based on infringement of two registrations (VA 2-298-977 and VA

11        2-195-419);

12  (2)   Zhuosai Lighting: $60,000, based on infringement of two registrations (VA 2-315-654 and

13        VA 2-195-419);

14  (3)   Grand Lamps: $60,000, based on infringement of two registrations (VA 2-315-654 and VA

15        2-195-419);

16  (4)   Wing Lighting: $30,000, based on infringement of one registration (VA 2-298-977);

17  (5)   Oasis Lamps: $60,000, based on infringement of two registrations (VA 2-315-654 and VA

18        2-195-419);

19  (6)   Momo Chandelier: $30,000, based on infringement of one registration (VA 2-315-654);

20  (7)   Fanci Light: $30,000, based on infringement of one registration (VA 2-298-977);

21  (8)   Cure Lighting: $30,000, based on infringement of one registration (VA 2-298-977);

22  (9)   Clouds Lights: $30,000, based on infringement of one registration (VA 2-298-977);

23  (10)  Kushigo Limited: $90,000, based on infringement of three registrations (VA 2-315-654,

24        VA 2-195-419, and VA 2-298-977);

25  (11)  Lighting Forever: $60,000, based on infringement of two registrations (VA 2-195-419, and

26        VA 2-298-977);

27  (12)  Reborn Lighting: $90,000, based on infringement of three registrations (VA 2-298-977,

28        VA 2-195-419, and VA 2-315-654);

United States District Court
Northern District of California

19

(13)  Showsun Lighting: $60,000, based on infringement of two registrations (VA 2-315-654 and VA 2-195-419);

(14)  Sigma Living: $30,000, based on infringement of one registration (VA 2-298-977);

(15)  Ineffable Lighting: $30,000, based on infringement of one registration (VA 2-298-977);

(16)  Zenduce: $30,000, based on infringement of one registration (VA 2-298-977);

(17)  Oclolli: $30,000, based on infringement of one registration (VA 2-298-977); and

(18)  Kevin Studio: $30,000, based on infringement of one registration (VA 2-298-977).

## V.    CONCLUSION

For the reasons stated above, the undersigned RECOMMENDS that RH's motion for default judgment be DENIED as to Defendant Wang, and that the claims against Defendant Wang be DISMISSED WITHOUT PREJUDICE.  The undersigned RECOMMENDS that RH's motion for default judgment be GRANTED as to the remaining Defendants as follows:

1.  RH shall have and recover from Defendants statutory damages in the amounts stated above;

2.  PayPal, Inc. shall release any money contained in the PayPal account previously frozen by the Court for Defendant Zenduce using the support@zenduce.com e-mail account to be paid to RH in partial satisfaction of the aforementioned judgment;

3.  Defendants and their respective officers, agents, servants, employees, and all other persons acting in active concert and participation with them shall be enjoined from:

    a.  Copying, distributing, or publicly displaying any of the RH Copyrighted Works, including removing or disabling all website links in violation, and

    b.  Using any of the RH marks, or any marks confusingly similar thereto, in commerce in connection with the manufacturing for sale or sale of any lighting products;

4.  Within three business days of receipt of this order, the following registrars and the registry Verisign, Inc. shall disable the following domain names, through a registry hold or otherwise, and make them inactive and non-transferable pending further order:

| Domain Name | Registrar |
|---|---|
| Alimialight.com | eName Technology Co., Ltd. |
| Puslighting.com | Hong Kong Juming Network Technology Co., Ltd. |
| Alimialighting.com | eName Technology Co., Ltd. |
| Yami-lighting.com | Alibaba Cloud Computing (Beijing) Co., Ltd. |
| Yamilightings.com | Alibaba Cloud Computing Ltd. d/b/a HiChina (www.net.cn) |
| Grandlamps.com | eName Technology Co., Ltd. |
| Winglightings.com | NameSilo, LLC |
| Wing-lighting.com | NameCheap, Inc. |
| Oasislamps.com | Alibaba Cloud Computing Ltd. d/b/a HiChina (www.net.cn) |
| Oasislampus.com | Alibaba Cloud Computing Ltd. d/b/a HiChina (www.net.cn) |
| Momochandelier.com | Alibaba Cloud Computing Ltd. d/b/a HiChina (www.net.cn) |
| Poplamps.com | GoDaddy.com, LLC |
| Fancilight.com | NameCheap, Inc. |
| Fancilighting.com | NameCheap, Inc. |
| Curelighting.com | NameSilo, LLC |
| Cloudslights.com | Alibaba Cloud Computing Ltd. d/b/a HiChina (www.net.cn) |
| Cloudslamps.com | Alibaba Cloud Computing Ltd. d/b/a HiChina (www.net.cn) |
| Ericlightus.com | Alibaba Cloud Computing Ltd. d/b/a HiChina (www.net.cn) |
| Ericlights.com | Alibaba Cloud Computing Ltd. d/b/a HiChina |

| Domain Name | Registrar |
|---|---|
| | (www.net.cn) |
| Emmalighting.com | Alibaba Cloud Computing Ltd. d/b/a HiChina (www.net.cn) |
| Emmalightings.com | Alibaba Cloud Computing Ltd. d/b/a HiChina (www.net.cn) |
| Lighting-forever.com | Hosting Concepts B.V. d/b/a Registrar.eu |
| Rebornlighting.com | FastDomain Inc. |
| Showsunlights.com | Xin Net Technology Corporation |
| JHSigmafurniture.com | Alibaba Cloud Computing Ltd. d/b/a HiChina |
| Ineffablelighting.com | NameSilo, LLC |
| Ineffable-lighting.com | NameCheap, Inc. |
| Zenduce.com | IONOS SE |
| Moonilighting.com | Hostinger, UAB |
| Kevinstudioinc.com | NameCheap, Inc. |
| Kevinstudiolives.com | NameCheap, Inc. |

5. Within three business days of receipt of this order, the following Internet store or online marketplace platforms shall remove or disable the following storefronts:

| Defendants' Online Marketplace | Internet Store/Online Marketplace Platform |
|---|---|
| cnsigma.en.alibaba.com sigmafurniture.en.alibaba.com sigmaliving.en.alibaba.com | Alibaba.com Singapore E-Commerce Private Limited |
| momolight.en.alibaba.com | Alibaba.com Singapore E-Commerce Private Limited |

6. RH shall serve this report and recommendation on each Defendant in accordance with the TRO order, and shall immediately file a proof of service certifying service and describing the means of service;

7. The presiding judge shall retain jurisdiction for the purpose of making any further orders necessary or proper for the construction or modification of this judgment and permanent injunction, the enforcement thereof, and/or punishment for any violations thereof; and

8. The Clerk of the Court shall release and disburse the bond previously posted by RH in the amount of $10,000, along with any accrued interest less the Court's registry fee to RH's counsel, Lewis Roca Rothgerber Christie, LLP, 100 Pine Street, Suite 1750, San Francisco, CA 94111.

IT IS SO RECOMMENDED.

Dated: August 26, 2024

KANDIS A. WESTMORE
United States Magistrate Judge